ASSOCIATED GROCERS OF NEW ENGLAND, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 77–1073.

United States Court of Appeals, First Circuit.

Heard June 2, 1977.

Decided Sept. 16, 1977.

Kurt N. Swenson, Manchester, N. H., with whom Wiggin & Nourie, Manchester, N. H., was on brief, for petitioner.

Marjorie S. Gofreed, Atty., Washington, D. C., with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Michael S. Winer, Atty., Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, LAY, Circuit Judge,* CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Associated Grocers of New England, Inc., (the "employer") is a cooperative food wholesaler owned by several hundred independent grocers. When in August 1974, the employer's negotiations for a new contract with the union representing its warehousemen and truck drivers broke down, 189 of its employees went on strike. The strike, lasting for nearly three months, was marked by sporadic violence. When it was settled, the employer refused to permit four employees to return to work on grounds that during the strike they had engaged in serious misconduct; five others were suspended from one to two weeks for less serious alleged misconduct. The NLRB ordered the discipline of all employees rescinded and their reinstatement with back pay. The employer petitions for review of that order and the Board cross-petitions for enforcement.

■ At the end of an economic strike, an employer, unless otherwise justified, must reinstate striking employees, lest their discharge penalize the employees for exercising their right to strike under § 7, 29 U.S.C. § 157. *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378–79, 88 S.Ct. 543, 19

L.Ed.2d 614 (1967); *see NLRB v. Crimtex, Inc.*, 517 F.2d 501 (1st Cir. 1975). The employer asserts that the nine employees in question had engaged in threats and acts of intimidation which were not protected by § 7. It is well established that serious misconduct during a strike justifies a refusal to reinstate after the strike is over. On the other hand, minor picket line and other misconduct, even though crude or offensive, will not justify discipline, as the right to strike necessarily implies some "leeway for impulsive behavior". *NLRB v. Thor Power Tool Co.*, 351 F.2d 584, 587 (7th Cir. 1965). *See, e. g., NLRB v. Efco Manufacturing Co.*, 227 F.2d 675, 676 (1st Cir. 1955); *Blair Process Co.*, 199 N.L.R.B. 194 (1972). *See also Trustees of Boston University v. NLRB*, 548 F.2d 391, 393 (1st Cir. 1977).

■ The excesses engaged in by several of the employees of Associated Grocers were so slight that the Board was amply justified in concluding that the employer's discipline unjustifiably trenched up § 7 rights. One employee, Coppez, spat on a company security car window as it crossed the picket line. Even though Coppez was arrested and received a suspended fine from a New Hampshire judge for this conduct, there is substantial support for the Administrative Law Judge's characterization of the incident as "rough and trivial and not of such a serious nature as to deprive [him] of the protection of the Act." Another employee, Smith, made an obscene gesture and hurled crude epithets at supervisors accompanying strikebreakers across the picket line. The ALJ was justified in discounting the seriousness of this conduct, particularly in view of her warranted finding that Smith's ire had been provoked by an offensive comment by one of the supervisors. We affirm the Board's order as it related to the discipline of Coppez and Smith.

The cases of two employees who verbally threatened strikebreakers and of two employees who, in an intimidating fashion, followed a supervisor home in an auto at night

* Of the Eighth Circuit, sitting by designation.

are more difficult. One of the employees, Bourgeois, stepped forward from a picket line to confront three persons seeking jobs at the plant. The ALJ made the following findings which the Board adopted:

> " . . . I find that Bourgeois approached the three job applicants about twenty-five feet from the gate where forty to fifty strikers were picketing, and told them not to go through if they valued their lives, or words to that effect, that Nadeau [one of the three] considered the remark as a threat on his life; and that the incident caused Nadeau to abandon his intention of applying for work."

The ALJ characterized Bourgeois' conduct as, in her opinion, "the closest of all to conduct serious enough to strip him of his reinstatement rights", emphasizing that "[i]n the presence of forty to fifty pickets he threatened the lives of three job applicants . . . and succeeded in causing at least one of them, Samuel Nadeau, to abandon his pursuit of a job." However, the ALJ felt constrained to follow the Board's then current doctrine that verbal threats lose the protection of § 7 only when "accompanied by . . . physical acts or gestures that would provide added emphasis or meaning to [the] words . . . ." *W. C. McQuaide, Inc.*, 220 N.L.R.B. 593, 594 (1975), *rev'd in pertinent part*, 552 F.2d 519, 527 (3d Cir. 1977).

■ The Board is entitled to considerable deference in its determination of the scope of § 7 and its application of the Act to the varying circumstances of industrial relations. *See NLRB v. Pipefitters Local 638*, 429 U.S. 507, 525, 97 S.Ct. 891, 51 L.Ed.2d 1 (1977); *Fleetwood Trailer Co., supra* at 378; *NLRB v. Beth Israel Hospital*, 554 F.2d 477, 480 n. 2 (1st Cir. 1977). But we agree with the Third Circuit, reversing in *McQuaide, supra*, 552 F.2d at 527, that the Board's formulation, quoted above, is too inelastic to provide a reliable means for distinguishing serious misconduct or threats from protected activity. A serious threat may draw its credibility from the surrounding circumstances and not from the physical gestures of the speaker. Judge Friendly, writing in *United States v. Garguilo*, 310 F.2d 249, 253

(2d Cir. 1962), pointed out that the mere presence of a 250-pound bruiser at a shakedown, as a companion to the extortionist, may adequately establish the former's criminal complicity even though he made no threat or gesture. In the present case, Bourgeois' threat was given credibility by the presence of forty or fifty pickets a short distance from the speaker. He did not have to add a shaken fist. While the presence of physical gestures accompanying a verbal threat may be probative of the threat's seriousness, we think the Board commits legal error insofar as it hinges the protections of § 7, entirely on the presence or absence of physical gestures.

■ We further agree with the Third Circuit in *W. C. McQuaide, Inc., supra* at 527, that while it is the primary responsibility of the Board, not the courts, to strike a proper balance in these matters, an employer need not "countenance conduct that amounts to intimidation and threats of bodily harm. Threats are not protected conduct under the Act . . . ." The Third Circuit applied the following test for determining when misconduct loses the protection of § 7:

> "whether the misconduct is such that, under the circumstances existing, it may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act."

552 F.2d at 528, *quoting Operating Engineers Local 542 v. NLRB*, 328 F.2d 850, 852–53 (3d Cir. 1964). We agree that an objective standard, denying protection to misconduct that in the circumstances reasonably tends to coerce or intimidate, is appropriate.

■ Here the ALJ, and in adopting her findings, the Board, found that Bourgeois "threatened the lives" of the job applicants. The efficacy of the threat is indicated by the further finding that at least one left the company's premises in fear of his life and that Bourgeois made the threat in the presence of forty or fifty pickets. It was also found that none of the three entered the gate or were thereafter hired. Given these

findings, we think the Board erred in concluding that Bourgeois' conduct, which was clearly such as would reasonably tend to coerce or intimidate, was protected under § 7. We therefore decline to enforce the Board's Order that Bourgeois be reinstated.

Another employee, Paquette, was discharged by Associated Grocers and ordered reinstated by the Board. Paquette approached a neighbor whom he had learned was planning to apply for a job as a strikebreaker. According to testimony credited by the ALJ, Paquette informed the neighbor that strikebreakers historically had been retaliated against, sometimes violently, and that the neighbor might similarly expect "repercussions". Although the ALJ, in findings adopted by the Board, found that Paquette's statements were "a clearly implied threat of violence" which was intended to intimidate the neighbor, she excused Paquette's conduct on grounds that the neighbor was not actually intimidated because he was not actually deterred from filing his job application.

■ The neighbor's subjective reaction was certainly relevant to the ultimate question of whether or not Paquette's conduct "reasonably tended to coerce or intimidate". We cannot, however, agree that it was determinative. That Paquette's neighbor continued to seek employment at Associated Grocers may well prove only that the neighbor, though intimidated, was forced by financial circumstances to overcome his fear and seek employment anyway. The neighbor's reaction also cannot be determinative of the seriousness of Paquette's threat in view of the ALJ's concurrent findings that the statements, although "general in nature," "were so loaded with references to violence that they carried a clearly implied threat of violence." Viewing these conflicting findings as to the degree of seriousness of the threat in light of our rejection of the Board's *per se* rule regarding threats unaccompanied by physical acts, we find ourselves unable appropriately to determine whether or not the Board would or should have held Paquette's statements to be protected had it applied the appropriate objective standard, *supra*. We therefore remand Paquette's case to the Board for reconsideration in light of the principles herein stated.

Two other employees, Samson and Moreau, followed a supervisor in a car for fourteen miles at night. They frightened the supervisor sufficiently that he continued past his house lest his wife and children be drawn into the danger. He ultimately turned down a lonely dead-end country road and his egress was blocked temporarily by Samson and Moreau. In findings adopted by the Board, the ALJ found that the two employees "set forth on this adventure for the purpose of intimidating" the supervisor, and that, contrary to their testimony, they had blocked his car. However, while "intending to and succeeding in frightening him", the judge concluded that the conduct of the two men was "not sufficiently serious to justify disciplining them", for "[i]t is clear that [the supervisor's] fear was soon put to rest, he was never in any danger, and he eventually realized this . . . ."

■ The ALJ's findings focussed mainly on the supervisor's subjective reaction to Samson's and Moreau's conduct. However, the testimony credited by the judge leaves no doubt that their actions, viewed objectively, reasonably tended to intimidate within the meaning of the standard we have adopted. Trailing a supervisor for a number of miles down lonely, dark roads in the midst of a hard-fought strike can only have the effect of frightening one. Nevertheless, the ALJ excused the employees' misconduct on grounds that the supervisor's fear was eventually put to rest and the intimidation did not ripen into physical harm. But we think the Board exceeded its authority in conferring immunity under the Act upon such obviously frightening conduct. We find the Board's disposition to be so unsupported in the record that we are compelled to decline to enforce its order rescinding Samson's and Moreau's two week suspensions.

The discipline meted out to three other employees raises somewhat different issues. Juneau and Karam were discharged for allegedly puncturing a tire of a truck rented

by a member of Associated Grocers. Bernier was suspended for one week for allegedly intentionally falling in front of a car crossing the picket line in order to frighten the driver. The ALJ found that the employees had not engaged in the conduct which they were charged and ordered their discipline revoked. Associated Grocers challenges both the findings that the employees were innocent of misconduct and the authority of the Board to order their penalties rescinded.

With respect to the Juneau-Karam incident, the brother of an Associated Grocer testified that he saw Juneau plunge an instrument into the truck tire and he gave an in-court identification of Karam.

The witness's testimony was contradicted by Juneau's and his wife's exculpatory testimony which placed Juneau elsewhere. The ALJ reconciled the conflicts by discrediting the company's witness in toto on the grounds of contradictions in what he said.

■ In *NLRB v. Pearl Bookbinding Co.*, 517 F.2d 1108, 1112 (1st Cir. 1975), we said: "This court's function is limited to deciding whether on the record as a whole there is substantial evidence to support the Board's findings. Here there was ample supporting evidence. We have said that Board findings on credibility must stand unless they are beyond the bounds of reason."

*See also NLRB v. Universal Packaging Corp.*, 361 F.2d 384, 387–88 (1st Cir. 1966). Here the finding on credibility clearly falls within the bounds of reason. There were obvious unexplained inconsistencies in the testimony of the company's witness and no other evidence from which the alleged misconduct could be inferred.

[11] We also reject the argument that the Board could not order reinstatement of Juneau and Karam because the General Counsel had failed to defeat the employer's defense of a good faith belief in their guilt. This reasoning was rejected thirteen years ago by the Supreme Court in *NLRB v. Burnup & Sims, Inc.*, 379 U.S. 21, 23, 85 S.Ct. 171, 172, 13 L.Ed.2d 1 (1964):

"Section 8(a)(1) is violated if it is shown that the discharged employee was at the time engaged in a protected activity, that the employer knew it was such, that the basis of the discharge was an alleged act of misconduct in the course of that activity, and that the employee was not, in fact, guilty of that misconduct."

The company's argument that Juneau and Karam were not "at the time engaged in a protected activity" within the meaning of *Burnup & Sims* because the tire puncture occurred fifty miles from the strike site is somewhat more credible. But the reading of the language from that case is too literal. The Court also emphasized that the discipline could not be imposed if the alleged misconduct occurred "in the course of [the protected] activity," *id.*, and distinguished the case where misconduct was "wholly disassociated from § 7 activities." *Id.* at 24, 85 S.Ct. at 172. *Burnup & Sims* contemplates protection from erroneous discipline for misconduct which allegedly occurred in furtherance of a union's aims. Juneau's and Karam's alleged participation in the puncturing incident was clearly seen to be in furtherance of the strike and under *Burnup & Sims* the Board was fully warranted in ordering their reinstatement once it found them not guilty of the misconduct.

■ Finally, the employer argues that Bernier intentionally fell in front of the slow-moving vehicle driven by a strikebreaker and that the ALJ erroneously ignored evidence to this effect. We have examined the evidence cited by the company and do not agree that it supports the employer's argument. A police officer who was at the scene testified that Bernier walked in front of the car but did not attribute a motive to Bernier. He also testified that pickets in the past had sometimes "at the last second crossed the path of the vehicle and with this particular incident with Mr. Bernier I observed the same thing." This testimony does not contradict Bernier's statement that the accident was not intentional and we enforce the Board's order that his one week suspension be rescinded.

We have examined the other points raised by the employer and find them to be without merit.

*Enforced in part; remanded in part; reversed in part.*