**CHEVRON U.S.A. INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 81-1948.**

United States Court of Appeals, Third Circuit.

Argued Feb. 17, 1982.

Decided March 17, 1982.

Linda B. Weisel (argued), William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Atty. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Noble K. Gregory (argued), William Gaus, Anne E. Libbin, Kevin M. Fong, San Francisco, Cal., for petitioner; Pillsbury, Madison & Sutro, San Francisco, Cal., of counsel.

Before ADAMS and SLOVITER, Circuit Judges, and VanARTSDALEN, District Judge.*

**OPINION OF THE COURT**

PER CURIAM:

In this appeal, Chevron U.S.A. Inc. petitions for review of a final order of the National Labor Relations Board (NLRB) and the Board cross-files for enforcement. The Board determined that Chevron committed an unfair labor practice when it suspended an employee who had jumped on the hood of an automobile driven by a nonstriker, on the ground that such conduct is

* Honorable Donald W. VanArtsdalen, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

protected strike-related activity. We conclude that the employee's conduct was not so protected, and accordingly we decline to enforce the Board's order.

### I.

For more than four months, a Chevron facility in Richmond Beach, Washington was the object of an economic strike conducted by members of the Petroleum Workers Union. On the second day of the strike, Fred Legg, a participating striker, jumped on the hood of an automobile being driven out of the facility by Tim Meeson, one of Chevron's gate guards. Legg remained on the hood for 1.3 miles, repeatedly beating on the windshield. The car then halted at a stop sign, and another automobile filled with strikers struck Meeson's car from behind. At that point Legg was ordered to remove himself from Meeson's hood by Dennis Lindsey, a policeman who had observed the incident. No injuries or property damage resulted from this incident.

Approximately two months later, when the strike had been concluded, Chevron notified Legg that, as a result of the incident recounted above, he was to receive a disciplinary suspension of ten working days. The suspension began on April 30, 1980, coincident with the end of the strike. Shortly thereafter, Legg filed a grievance with the NLRB.

At a hearing before an administrative law judge (ALJ), Legg testified that he leaped onto the hood of Meeson's car to save himself from being run over. The ALJ, noting that this testimony was "singularly unconvincing," found that Legg had "placed himself on the hood to harass Meeson." Appendix at 4. In addition, the ALJ credited police officer Lindsey's testimony that "Meeson proceeded slowly enough for at least a substantial portion of the distance to have permitted Legg to dismount with safety" and that "Legg recurrently hit the windshield during some if not all of the distance." Id.

Despite these findings, the ALJ concluded that Legg's activity constituted protected strike-related activity, and hence that Chevron's suspension of Legg violated sections 8(a)(3) and 8(a)(1) of the National Labor Relations Act. The NLRB adopted the findings and conclusions of the ALJ. The Board ordered Chevron to cease and desist from such practices, to expunge from its records any reference to the disciplinary suspension of Legg, to notify Legg in writing of the expungement, to make Legg whole for any loss of earnings, benefits, or seniority suffered as a result of the suspension, and to post appropriate notices. Chevron has petitioned this Court for review of the Board's order, and the Board has moved for enforcement of its order.

### II.

As this Court recognized decades ago, Congress must have contemplated that minor acts of misconduct would go hand-in-hand with most strikes. *Republic Steel Corp. v. NLRB*, 107 F.2d 472, 479 (3d Cir. 1939), *modified on other grounds*, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6 (1940). In a slightly different context, the Supreme Court has noted that a "trivial rough incident" or a "moment of animal exuberance" does not convert otherwise peaceful picketing into violence. *Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc.*, 312 U.S. 287, 293, 61 S.Ct. 552, 555, 85 L.Ed. 836 (1941). Thus, minor breaches of the peace adjacent to picket lines ordinarily are tolerated as the inevitable concomitant of the right to strike. *See, e.g., North Cambria Fuel Co. v. NLRB*, 645 F.2d 177, 181 (3d Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 970, 71 L.Ed.2d 110 (1981) (use of obscenities without a physical attempt to interfere with nonstriking truck drivers around the picket area protected under the Act); *Associated Grocers of New England, Inc. v. NLRB*, 562 F.2d 1333, 1335 (1st Cir. 1977) (spitting on a company security car as it passed picket area; protected); *Montgomery Ward & Co. v. NLRB*, 374 F.2d 606, 608 (10th Cir. 1967) (namecalling, swearing, and fist shaking; protected); *NLRB v. Buitoni Foods Corp.*, 298 F.2d 169, 174–75 (3d Cir. 1962) (minor scuffling on the picket line; protected).

More egregious acts, on the other hand, have not enjoyed such statutory protection. In *NLRB v. W. C. McQuaide, Inc.*, 552 F.2d 519 (3d Cir. 1977), for example, this Court held that conduct amounting to "intimidation and threats of bodily harm" was not protected by the Act. *Id.* at 527. There the employer discharged a striker who had followed a truck to a delivery point that was far from the picket line, threatened the driver, and partially blocked his egress. The Court concluded that such conduct "was not merely spontaneous picket line activity," *id.* at 528, and that the misconduct was " 'such that, under the circumstances existing, it may reasonably [have] tend[ed] to coerce or intimidate employees in the exercise of rights protected under the Act.' " *Id.* (quoting *Local 542, International Union of Operating Engineers v. NLRB*, 328 F.2d 850, 852–53 (3d Cir.), *cert. denied*, 379 U.S. 826, 85 S.Ct. 52, 13 L.Ed.2d 35 (1964)). The employer thus did not violate the Act when it discharged the employee under these circumstances. *See also NLRB v. E-Systems, Inc.*, 642 F.2d 118, 121–23 (5th Cir. 1981) (bending an aerial on a car not protected under the Act); *Associated Grocers, supra* 562 F.2d at 1337 (following a nonstriker's car away from the strike site and temporarily blocking its way; not protected); *NLRB v. Otsego Ski Club*, 542 F.2d 18, 19 (6th Cir. 1976) (throwing an egg at a nonstriker's car; not protected); and *NLRB v. Cambria Clay Products Co.*, 215 F.2d 48 (6th Cir. 1954) (physical assault upon nonstriking employee; not protected).

We conclude that, under the standards articulated in *McQuaide*, the conduct at issue here—jumping on the hood of a nonstriker's car and continually pounding on the windshield as the nonstriker attempted to drive on a public road—"reasonably tend[ed] to coerce or intimidate," and hence is unprotected by the National Labor Relations Act. We arrive at this conclusion for a number of reasons. For one thing, the activity occurred away from the picket line, on a public highway. The misconduct was prolonged in duration. More important, Legg's behavior consisted not of a verbal threat but of a physical act that could have resulted in serious injury. Finally, while recognizing that it is not dispositive, we note that Legg's intent, throughout the incident, was to harass and intimidate Meeson.

In concluding that Legg's conduct was protected, the Board relied in part on the fact that Meeson did not testify and that there was no evidence that Meeson's vision "was seriously impaired for any great distance or that he had cause to be apprehensive that, should he pull off the road and stop, he would be in danger from the strikers." Appendix at 5.[1] As this Court has made clear, however, no such evidence of subjective perception on the part of the harassed employee is required in a proceeding of this sort. In *McQuaide, supra*, we stated flatly: "Rather than focus on either the subjective intent of the striker or the perception of the 'victim,' we adopt an *objective standard* to determine whether conduct constitutes a threat sufficiently egregious to justify" the imposition of sanctions by the employer.[2] 552 F.2d at 527. *See also Local 542, International Union of Operating Engineers v. NLRB, supra*, 328 F.2d at 852–53 ("That no one was in fact coerced or intimidated is of no relevance. The test of coercion and intimidation is not whether the misconduct proves effective [but rather whether] under the circumstances existing, it may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act"). Under this standard, Meeson's subjective perceptions and reactions, while arguably relevant, need not be demonstrated.

### III.

The Board, of course, is "entitled to deference in drawing the line between strike

---

1. The ALJ incorrectly relied on the Board's decision in *McQuaide*, 220 NLRB 593 (1975), which was reversed in relevant part by our decision in the same proceeding. 552 F.2d 519.

2. The *McQuaide* approach has been adopted by at least one other circuit. *See Associated Grocers of New England, Inc. v. NLRB*, 562 F.2d 1333, 1336 (1st Cir. 1977).

misconduct and protected activity," *North Cambria Fuel Co. v. NLRB*, 645 F.2d at 181. In concluding that Legg's conduct was not sufficiently serious to remove him from the protection of the Act, however, the Board appears to have misapplied well-settled legal standards and overlooked relevant precedents. The behavior at issue here simply cannot be characterized as a "moment of animal exuberance" on an otherwise peaceful picket line. The act was not peaceful; the context was not the picket line. Accordingly, we will grant Chevron's petition for review, and will deny enforcement of the Board's order.