**MIDWEST SOLVENTS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 80–2172.

United States Court of Appeals, Tenth Circuit.

Dec. 30, 1982.

Rehearing Denied March 24, 1983.

R. Dan Boulware of Watkins, Boulware, Lucas & Miner, St. Joseph, Mo., for petitioner.

Paul E. Bateman, Atty., N.L.R.B., Washington, D.C. (W. Christian Schumann, Atty., and William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., with him on the brief), for respondent.

Before HOLLOWAY, McWILLIAMS, and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

In this case we are asked to determine whether certain acts of strike misconduct by two economic strikers are sufficient grounds for discharge. The National Labor Relations Board (Board) held that the acts were insufficient and ordered the employer, Midwest Solvents, Inc. (Midwest), to reinstate the two strikers with full back pay. Midwest Solvents, Inc., and Harold Lassen, 251 N.L.R.B. 1282 (1980). Midwest has petitioned this Court to set aside the reinstatement order,[1] and the Board has cross-petitioned for enforcement. The decision of the Board is affirmed, and enforcement is ordered.

## I. Background

Midwest, a Kansas corporation, is engaged in the production, manufacture, distribution, and non-retail sale of alcohol and alcohol by-products. Midwest has a production plant in Atchison, Kansas. During the period relevant to this appeal, the Distilling, Rectifying, Wine and Allied Workers International Union of America, Local No. 74 was the recognized collective bargaining agent of the workers employed by Midwest at the Atchison plant.

---

1. Jurisdiction exists under 29 U.S.C. § 160(f) (1973).

On August 31, 1978, the collective bargaining agreement covering the Atchison plant bargaining unit expired. The employees struck and set up picket lines at the entrances to the Atchison plant. Of approximately 200 employees in the bargaining unit, 190 refused to work. Despite the efforts of the striking employees, however, Midwest continued to operate the Atchison plant, using management personnel, workers hired after the strike began, repentant strikers, and the few employees who had refused to strike to man the plant. The strike continued for 29 days. Finally, on September 29, 1978, a new collective bargaining agreement was ratified, and the strikers began returning to work.

Midwest refused, however, to take back six employees, claiming that the six had engaged in serious misconduct during the strike and so were not entitled to reinstatement. After further investigation, Midwest allowed one of the six to return to work. Two others did not challenge the decision made by Midwest and were not rehired. The remaining three, Harold, Donald, and Roy Lassen, filed unfair labor practice charges against Midwest with the Board. All three denied the allegations of misconduct made by Midwest and claimed that Midwest was punishing them for engaging in protected activity during the strike.

The unfair labor practice charges were heard by an administrative law judge, who, after conducting an extensive hearing, ordered Midwest to reinstate the Lassens. Thereafter, Midwest filed exceptions with the Board to the portions of the administrative law judge's decision which related to Roy and Donald Lassen.[2] The general counsel, in turn, filed cross-exceptions. With a few modifications, the Board adopted the decision of the administrative law judge and ordered Midwest to reinstate Roy

and Donald Lassen with full back pay. Midwest Solvents, Inc., and Harold Lassen, 251 N.L.R.B. 1282 (1980). The present proceedings followed.

## II. Applicable Law

■ Under federal labor law, employees enjoy the right to engage in concerted activity for the purpose of mutual aid or protection. 29 U.S.C. § 157 (1973). Striking is one type of protected activity. See 29 U.S.C. § 163 (1973). But the right to strike is not absolute. An employer can hire permanent replacements for employees engaged in an economic strike. *NLRB v. McKay*, 304 U.S. 333, 345–46, 58 S.Ct. 904, 910–11, 82 L.Ed. 1381 (1938). If, after the strike terminates, positions are available, however, the employer cannot refuse to reinstate the strikers. *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378, 88 S.Ct. 543, 545, 19 L.Ed.2d 614 (1967). Otherwise, the effect would be to discourage exercise of a protected right. Consequently, "unless the employer who refuses to reinstate strikers can show that his action was due to 'legitimate and substantial business justifications,' he is guilty of an unfair labor practice." *Id.* (quoting *NLRB v. Great Dane Trailers*, 388 U.S. 26, 34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967)).

■ Strike misconduct, for example, coercive or threatening acts, may constitute a "legitimate and substantial business justification" for refusing to reinstate a striking employee.[3] See, e.g., *Associated Grocers v. NLRB*, 562 F.2d 1333 (1st Cir.1977); *NLRB v. McQuaide, Inc.*, 552 F.2d 519, 527–28 (3d Cir.1977); *NLRB v. Cambria Clay Prod. Co.*, 215 F.2d 48, 54 (6th Cir.1954). Of course, an employer's determination not to reinstate a striker must be based on evidence that the striker personally engaged in strike misconduct. *NLRB v. Wichita Tele-*

---

**2.** Midwest did not object to the decision as it related to Harold Lassen and subsequently reinstated him.

**3.** The rationale for this rule was set forth by the Supreme Court in *NLRB v. Fansteel Metallurgical Corp.*, 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627 (1939). There, the court stated: "To

justify [strike misconduct] because of the existence of a labor dispute or of an unfair labor practice would be to put a premium on resort to force instead of legal remedies and to subvert the principles of law and order which lie at the foundations of society." *Id.* at 253, 59 S.Ct. at 495.

*vision Corp.,* 277 F.2d 579, 585 (10th Cir. 1960). Moreover, not every incident of impropriety suffices. Impulsive behavior during a strike is to be expected—and sometimes condoned, especially when directed at nonstriking employees or strikebreakers. *See, e.g., Montgomery Ward & Co. v. NLRB,* 374 F.2d 606, 608 (10th Cir.1967). But "serious" strike misconduct cannot be excused. *NLRB v. Wichita Television Corp.,* 277 F.2d at 585.

■ Finally, we note that it is the primary responsibility of the Board to determine whether specific conduct is sufficiently egregious to justify a refusal to reinstate. *See NLRB v. McQuaide, Inc.,* 552 F.2d at 527. Accordingly, the Board's determinations in this area are entitled to some deference. *See, e.g., Associated Grocers v. NLRB,* 562 F.2d at 1336. Keeping the foregoing principles in mind, we turn to the arguments advanced by Midwest.

### III. Donald Lassen

Midwest's case against Donald Lassen is based on two incidents, both involving conversations with persons employed at the Atchison plant during the strike. In the first incident, Donald Lassen and a fellow striker spoke with one Bob Call, a nonstriking employee. In the second incident, Donald Lassen and another striker spoke to three college students who obtained temporary work at the Atchison plant during the strike. With regard to the two incidents the Board commented:

> The Administrative Law Judge also found that Donald Lassen had threatened Call, a nonstriking employee, as well as three college students who were working as strikebreakers. It is undisputed that Donald Lassen and striker Kesinger went to Call's apartment. When Call would not open the door, the two strikers asked Call not to work and offered to find him employment elsewhere. Call testified that, during the conversation, one of the strikers said that he had better "watch" himself, that "some of the boys might get rowdy." Apart from the fact that Call could not identify Lassen as having made

the threat, the words, at most, were an isolated act of mild intimidation spoken in apparent frustration over Call's refusal to join the strikers' cause. There is nothing to indicate that Lassen went to Call's apartment with the intention of harassing or intimidating him. Further, there is no evidence that Lassen ever spoke with Call or attempted to interfere with his employment again. The isolated threat constitutes nothing more than the type of impulsive, trivial misdeed which we have found, in the past, to be insufficient to warrant a denial of reinstatement to a protected striker. We reach the same conclusion regarding his right to reinstatement in light of the Administrative Law Judge's finding that Lassen "threatened" three college students who were working during the strike. Further, we note that the record contains no direct testimony as to what Lassen said to the students. Lassen denied saying anything and the only other witness testifying to the conversation was Mercer, Lassen's companion, who corroborated Lassen.

■ After examining the record, we conclude that the Board's findings of fact are supported by substantial evidence. Consequently, the findings of fact made by the Board are conclusive. 29 U.S.C. § 160(f) (1973). The question, then, is whether on the facts as the Board found them it can be said that Donald Lassen engaged in serious strike misconduct. We do not think so.

■ The only "threatening" statement made to Bob Call was that he should "watch out" because "some of the boys might get rowdy." In the absence of other threatening statements or of some coercive action, this statement is too ambiguous to be considered a threat. *See NLRB v. McQuaide, Inc.,* 552 F.2d at 528. And in any event, it was never established that it was Donald Lassen and not his companion who made the statement. *See NLRB v. Wichita Television Corp.,* 277 F.2d at 585. At best, then, the record indicates that Donald Lassen attempted to dissuade Bob Call from continuing to work during the strike.

That was his right, and Midwest cannot refuse to reinstate him for that reason.

■ Similarly, the incident involving the three college students cannot be the basis for refusal to reinstate. It was never shown that Donald Lassen threatened the students. *See id.* The students never testified, and the two parties who did testify, Donald Lassen and his companion, denied making any threats. Donald Lassen admitted having asked the students not to be "scabs," but that statement alone can hardly be said to constitute egregious misconduct. *See NLRB v. McQuaide, Inc.,* 552 F.2d at 528. Thus, the evidence indicates that Donald Lassen merely attempted to convince strikebreakers to respect the picket line. Again, such action is not improper.

### IV. Roy Lassen

Midwest's case against Roy Lassen is, in our view, a bit stronger, but still not strong enough.[4] During the strike, local farmers continued to sell grain to Midwest. Don Caudle made several deliveries of corn, and in so doing, crossed the picket line. On one such occasion, according to Caudle, a person walking the picket line, whom Caudle could not identify, threatened to blow up his combine if he continued to make deliveries. In this connection, the Board commented:

> The Administrative Law Judge found that, while walking, picket Roy Lassen threatened a farmer that he would blow up, or burn up, the farmer's combine if the farmer continued to make deliveries. The record indicates that the threat was made as the farmer was leaving the [Midwest's] plant, and it is undisputed that the farmer made subsequent deliveries without any interference or threats from Lassen or any other picket. It is well established that not every incident of misconduct committed on a picket line justifies a refusal to reinstate a striking employee. We find that this isolated threat, unaccompanied by any attempt to interfere with the delivery, is the type of

minor misconduct which was in the contemplation of Congress when it provided for the right to strike.

■ We agree with the Board that such statement, even if made by Roy Lassen, does not, when viewed in context, justify Midwest's refusal to reinstate. Although this is not in itself decisive, we nonetheless note that Caudle himself was not particularly frightened by the statement, and that he continued to make deliveries after the incident. Further, we note that there is no evidence that Roy Lassen subsequent to the alleged threat interfered with Caudle in any manner. Nor was there any indication that Roy Lassen intended at some time to carry out the threat. Accordingly, we attribute the statement to "animal exuberance," the result of high emotions and frustration on the picket line.

### V. Conclusion

Permeating Midwest's brief is the belief that the Board employed the wrong standard in evaluating the conduct of the Lassens. According to Midwest, the Board applied the rule that mere threats can never justify refusal to reinstate, instead of the "objective" test set forth in *NLRB v. McQuaide, Inc.,* 552 F.2d at 527–28 (3rd Cir.1977). The Board, however, in its decision specifically denied that it was following any such rule.

We hold that the findings of fact made by the Board are supported by substantial evidence and are therefore conclusive. Further, we hold that on those facts refusal to reinstate would not be proper under any of the standards suggested by Midwest. Accordingly, we need not decide the merits of the objective test.

Decision affirmed and enforcement ordered.

BARRETT, Circuit Judge, dissenting:

Administrative Law Judge Rasburg applied the NLRB's standard which provides that the test to determine whether strikers should be discharged is whether their mis-

---

4. We also note that it was doubtful whether Midwest established that it was Roy Lassen who made the threat. *See* Midwest Solvents, Inc., and Harold Lassen, 251 N.L.R.B. 1282, 1284–86 (1980) (Truesdale, M., concurring).

conduct is so violent as to render them unfit for further employment or whether it "merely constitutes a trivial rough incident occurring in a moment of animal exuberance." The Board, in upholding the finding of the ALJ, was perfectly aware that the ALJ applied this standard, rather than the "objective test" required by two sister circuit courts of appeal. *See: NLRB v. McQuaide, Inc.,* 552 F.2d 519 (3rd Cir.1977); *Associated Grocers of New England, Inc. v. NLRB,* 562 F.2d 1333 (1st Cir.1977). The majority opinion explains that the Board denied, in its decision, that it was following its "animal exuberance" rule. In truth and in fact the Board did follow this rule.

The threats and actions of Roy and Donald Lassen when measured by the proper "objective standard" test which this court should, in my view, adopt, clearly constitute such misconduct which amounts to coercion and intimidation. The ALJ found that their conduct placed employees and customers in fear. In my view, the actions of the Lassens were calculated threats carried out over a period of some 30 days. They did not constitute isolated threats or "trivial" misdeeds.

I would adopt the "objective test" standard of the First and Third Circuits, *supra,* and thus deny enforcement of the Board's order.