**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**PRETERM, INC., Respondent.**

**District 1199, National Union of Hospital and Health Care Employees, AFL–CIO, Intervenors.**

**DISTRICT 1199, MASSACHUSETTS, NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, and Preterm, Inc., Respondents.**

**Nos. 85–1222, 85–1300.**

United States Court of Appeals, First Circuit.

Heard Oct. 11, 1985.

Decided Feb. 20, 1986.

Scott A. Lathrop, Boston, Mass., for Preterm.

Judith A. Dowd with whom Paul J. Spielberg, Deputy Asst. Gen. Counsel, Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Elliott Moore, Deputy Asst. Gen. Counsel, Washington, D.C., were on brief, for N.L.R.B.

Stephen J. Kehoe and Kehoe, Doyle, Playter & Novick, Boston, Mass., on brief, for Dist. 1199.

Before BOWNES and TORRUELLA, Circuit Judges, and HILL,* Senior District Judge.

IRVING HILL, Senior District Judge:

In this case the National Labor Relations Board ("NLRB") seeks a judgment enforcing a Board order. Both parties affected by that order, namely, the employer, Preterm, Inc., ("Preterm"), and District 1199, Massachusetts, National Union of Hospital and Health Care Employees, ("Union"), object to a portion of that order. Each petitions this court for review of the order and a judgment setting aside the portion to which it objects.

We have determined to reject both sides' objections and to enforce the order.

**BACKGROUND AND FACTS**

Preterm, the employer, is a health care clinic in Brookline, Mass. In October, 1976, Preterm was negotiating with the union for an initial labor agreement. During those negotiations, the union went on strike. It

---

* Of the Central District of California, sitting by designation.

also filed unfair labor charges against Preterm alleging failure to bargain in good faith. Shortly thereafter, Preterm filed unfair labor practice charges against the union accusing certain of the striking employees of violence and improper conduct on the picket line. In February, 1979, the Board issued a decision and order which held that Preterm had engaged in various unfair labor practices. These included refusing to bargain in good faith and threatening and coercively interrogating certain employees. The Board concluded that the strike was the result of the employer's unfair labor practices. The Board ordered Preterm, upon application, to reinstate with back pay any striking employee who had unconditionally offered to return to work, but reinstatement and back pay were not required for any employee who was guilty of picket line misconduct. The order is published at 240 NLRB Dec. 676. After the Board issued its order, Preterm stipulated that the order was valid in all respects.

Following the Board's order, the employer and the union unsuccessfully attempted to negotiate the details of the order's reinstatement and back pay provisions. Later negotiations between the Board's Regional Director and the employer were also unfruitful. So, in 1981, the Regional Director instituted the present proceeding by issuing a back pay specification setting forth his computation of back pay and interim earnings and his proposals as to which employees had forfeited reinstatement rights. The matter was tried before an administrative law judge.

As to back pay, the Board took the position that the back pay period should commence on March 3, 1977, the day immediately following an offer by the union that all employees would return to work. The employer contended that the union's offer of March 2, 1977, was not an unconditional offer to return to work within the meaning of the Board's basic reinstatement order of 1980. After an evidentiary hearing, the administrative law judge found that the March 2nd offer to return was unconditional and that reinstatement and back pay should proceed as of March 3rd.

The administrative law judge also found that five employees had engaged in such serious picket line misconduct that they were not entitled to reinstatement or back pay. These were employees Pinero, Walker, Erde, Matson and Reeves.

Both the employer and the union filed exceptions to the administrative law judge's decision. On December 14, 1984, the Board issued a supplemental decision in the matter. The Board affirmed the administrative law judge as to the March 3, 1977, reinstatement and back pay date. The Board agreed with the administrative law judge that all five of the above-named employees had forfeited their right to reinstatement, but held that one additional employee, Baskin, had also forfeited the right to be reinstated because of her picket line misconduct.

The Board seeks to have its supplemental order enforced in all respects. The employer seeks a judgment setting aside the portion of the supplemental order dealing with the March 3, 1977, reinstatement and back pay date. The union seeks to have set aside all provisions of the order holding that any employees were disqualified from reinstatement.

## I. WAS THE UNION'S OFFER TO RETURN TO WORK OF MARCH 2, 1977, AN UNCONDITIONAL OFFER

The union's offer of March 2, 1977, that all employees would return to work, is unconditional on its face. Nevertheless, the employer argued throughout the entire NLRB proceedings that the offer was in fact conditioned on the employer reinstating each and every striking employee, even though a number of them were ineligible for reinstatement because of picket line misconduct. The administrative law judge and the Board both rejected the employer's claim. We also reject it.

 Where an offer to return to work was conditional or unconditional is a question of fact. *Kellogg Co. v. NLRB*, 457 F.2d 519, 526 (6th Cir.), *cert. denied*, 409 U.S. 850, 93 S.Ct. 58, 34 L.Ed.2d 92 (1972).

Under section 10(e) of the NLRA, 29 U.S.C. § 160(e), a finding of fact by the Board is deemed "conclusive" if "supported by substantial evidence on the record as a whole." We find that the Board's decision that the offer of reinstatement was unconditional is supported by substantial evidence on the record as a whole. The offer was not an offer by the union that the company take back all of the employees or none. To the contrary, it contained a separate and separable offer to return made "on behalf of each and every employee."

■ When an offer to return to work is unconditional on its face, as this one was, the burden of proof to show that the offer was other than unconditional is on the employer. *Soule Glass and Glazing Co. v. NLRB,* 652 F.2d 1055, 1107 (1st Cir.1981); *NLRB v. Okla-Inn,* 488 F.2d 498, 505 (10th Cir.1973). The support for the Board's finding is more than adequate on the record as a whole, even if that burden of proof did not exist. When the employer's burden of proof is added to the equation, the record should be regarded as overwhelmingly supporting the Board's conclusion.

Neither the employer nor the union attacks the computation of each employee's back pay award as made by the administrative law judge and adopted by the Board. Therefore, we will enforce the Board's supplemental order as to each employee found not disqualified from returning to work.

## II. THE DISQUALIFICATION OF THE SIX EMPLOYEES

Under Section 7 of the NLRA, 29 U.S.C. § 157, employees are granted the right to peacefully strike, picket and engage in other concerted activities for the purpose of collective bargaining. Section 7 also gives other employees the right to refrain from such activities if they so decide.

■ Courts recognize that some confrontations between strikers and non-strikers are inevitable and may not be cause for discharge. *NLRB v. W.C. McQuaide, Inc.,* 552 F.2d 519, 527 (3rd Cir.1977). However, it is also the law that serious misconduct during a strike will justify a refusal to reinstate. *Associated Grocers of New England v. NLRB,* 562 F.2d 1333, 1335 (1st Cir.1977). *Accord Newport News Shipbuilding & Dry Dock Co. v. NLRB,* 738 F.2d 1404, 1408 (4th Cir.1984); *Chevron U.S.A., Inc. v. NLRB,* 672 F.2d 359, 361 (3rd Cir.1982).

■ The cases establish a standard to be applied in examining conduct of a striking employee to determine whether that employee has lost the right of reinstatement. As to conduct directed against non-striking employees, the employee forfeits the right to reinstatement if, under the circumstances, "[the conduct] may reasonably tend to coerce or intimidate [non-striking] employees in the exercise of their right to refrain from strike activities." *Clear Pine Mouldings, Inc.,* 268 NLRB at 1046, (quoting *Operating Engineers Local 542 v. NLRB,* 328 F.2d 850, 852–53 (3rd Cir.), *cert. denied.* 379 U.S. 826, 85 S.Ct. 52, 13 L.Ed.2d 35 (1964)). *Accord Associated Grocers,* 562 F.2d 1333; *McQuaide,* 552 F.2d 519. *See also Newport News Shipbuilding & Dry Dock Co. v. NLRB,* 738 F.2d 1404, 1408 n. 6 (4th Cir.1984).

■ It is also clear that misconduct of a striking employee directed against patrons or customers of the employer, or others seeking to enter the premises for business purposes, is the equivalent of misconduct against fellow employees. *Associated Grocers,* 562 F.2d 1333; *Clear Pines Mouldings,* 268 NLRB at 1046 n. 14.

In this area, as in many others, great deference must be given to the views and determination of the Board. As the Supreme Court has said, questions about whether reinstatement and back pay for strikers or the denial thereof would best effectuate the policy of the [NLRA] are "committed to the Board ... in the exercise of its discretion subject only to the limitation that its actions may not be arbitrary, unreasonable and capricious." *NLRB v. Fansteel Corp.,* 306 U.S. 240, 258, 59 S.Ct. 490, 497, 83 L.Ed. 627 (1939).

■ After reviewing the instant record and the decisions of the administrative law judge and the Board, we are satisfied that the Board's denial of reinstatement and back pay to the six employees in question involved correct application of the law and can in no way be characterized as arbitrary, unreasonable or capricious. The acts which each of the six employees committed during the strike which were held to disqualify them from reinstatement and back pay are set forth at length in the record and in the decisions of the administrative law judge and the Board. It will not serve any useful purpose to quote those findings at length. The following capsulized descriptions demonstrate that each disqualification rests on an adequate factual basis.

1. **Pinero.** She interfered with the efforts of a non-striking nurse to enter the premises by blocking the way and jockeying her body to attempt to keep the nurse out. Finally she grabbed the nurse and shook her. At a later time, while wearing heavy boots, she kicked the side of a car in which the Clinic Director was trying to get to work, damaging the car. She also kicked and damaged another car bearing non-striking employees attempting to enter the premises.

2. **Walker.** When a non-striking employee was leaving the work place, Walker called her a scab in a loud and angry voice and then spat in the non-striker's face. On another occasion, she spat at the same worker at close quarters but did not hit her. On a third occasion, she spat at a non-striking worker who was getting off a bus that had been escorted through picket lines.

3. **Erde.** While the Director and other staff members were going through the picket line in a car, she applied some sharp instrument to the side of the car, severely scratching two of the door panels.

4. **Matson.** When the Clinic Director attempted to reach some patients who were having difficulty entering the premises due to the pickets, Matson placed herself between the patients and the Director. She told the patients not to believe anything that the Director said, that the establishment had no staff, had untrained personnel and that it was not safe to enter. She told another patient on a different occasion that it was dangerous to go in, that the patient could be severely hurt and that the staff did not know what it was doing.

5. **Reeves.** On one occasion, she entered the employer's premises where a number of patients were sitting waiting for service and yelled that they should leave because it was a dangerous place for them to be and no one there could properly handle any medical problem. She was escorted from the building by police and charged with trespassing.

6. **Baskin.** She grabbed a non-striking employee attempting to go to work, requiring the police to escort the non-striking employee into the clinic. On another occasion she grabbed and held a patient by the arm as the patient was trying to enter the clinic and pushed the patient away from the premises.

For the reasons stated above,

1. The Board's petition to enforce its entire order is granted; and,

2. The petitions of the employer and the union, each seeking to set aside a portion of the Board's order, are denied.