[NOT FOR PUBLICATION]
United States Court of Appeals
For the First Circuit

No. 92-2236

LOCAL 14 UNITED PAPERWORKERS INTERNATIONAL
UNION, AFL-CIO AND INTERNATIONAL BROTHERHOOD
OF FIREMEN AND OILERS, LOCAL 246, AFL-CIO,

Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent.

No. 92-2346

NATIONAL LABOR RELATIONS BOARD

Petitioner,

v.

INTERNATIONAL PAPER COMPANY,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE NATIONAL LABOR RELATIONS BOARD

Before

Boudin, Circuit Judge,

Coffin, Senior Circuit Judge,

and Stahl, Circuit Judge.

Jeffrey Neil Young with whom McTeague, Higbee, Libner, MacAdam,

Case & Watson was on brief for Local 14 United Paperworkers

International Union, etc.
Vincent J. Falvo, with whom Linda Dreeben, Supervisory Attorney,

Julie B. Broido, Senior Attorney, Jerry M. Hunter, General Counsel,

Yvonne T. Dixon, Acting Deputy General Counsel, Nicholas E. Karatinos,

Acting Associate General Counsel, and Aileen A. Armstrong, Deputy

Associate General Counsel, were on brief for National Labor Relations
Board.
Jane B. Jacobs with whom Nancy B. Schess, Lee R. A. Seham, and

Seham, Klein & Zelman were on brief for International Paper Company,

amicus curiae.

August 19, 1993

STAHL, Circuit Judge. Local 14, United

Paperworkers International Union, AFL-CIO and International

Brotherhood of Fireman and Oilers, Local 246, AFL-CIO

(referred to collectively as "the Union") petition this court

to review and set aside that portion of an order of the

National Labor Relations Board ("the Board") affirming

International Paper Company's ("IP") discharge of four

striking employees for strike-related misconduct. IP

intervenes on the side of the Board. The Board cross-

petitions for enforcement of that part of its order requiring

IP to offer a fifth striker reinstatement. In the Board's

cross-petition, the Union intervenes on the side of the

Board. For the reasons set forth below, we grant enforcement

of the Board's order in its entirety.

I.

FACTUAL BACKGROUND

IP operates the Androscoggin Paper Mill in Jay,

Maine. Approximately 1200 members of the Union are among the

employees at the Jay facility. In June 1987, the collective

bargaining agreement between IP and the Union expired, and

Union workers went on strike. Nevertheless, IP maintained

operations at the mill throughout the strike, employing non-

striking union members and non-union replacement workers.

The walkout was marked by periodic outbreaks of violence,

-3-
3

threats, and general strike-related misconduct. In October,

1988, after the strike ended, IP discharged eleven strikers.

The discharges prompted the Union to file an unfair

labor practice charge alleging that IP violated sections

8(a)(3) and (1) of the National Labor Relations Act, 29

U.S.C. 158(a)(3) and (1) ("the Act"). The Union maintained

that IP discriminated against striking employees by

dismissing strikers for strike-related misconduct while

failing to dismiss non-strikers who had engaged in equally

serious or more serious misconduct. In a hearing before an

Administrative Law Judge ("ALJ"), the Union's discrimination

challenge was limited to the discharge of the following five

strikers: Lawrence Bilodeau, Lawrence Chicoine, Forrest

Flagg, Thomas Hamlin, and Arthur Storer. The ALJ compared

their respective acts of misconduct with that of non-striker

Andrew Barclay and found that all five strikers had engaged

in strike-related misconduct which warranted their discharge,

but that IP's dismissal of strikers Bilodeau and Flagg

constituted unlawful disparate treatment. The ALJ's finding

was predicated on his determination that non-striker Barclay,

who retained his job but received a warning, had engaged in

strike-related misconduct at least as serious as the

misconduct of Bilodeau and Flagg. The ALJ found no disparate

treatment, however, in IP's discharge of Chicoine, Hamlin and

-4-
4

Storer. Both IP and the Union filed exceptions to the ALJ's

decision.

On September 20, 1992, the Board issued a final

decision and order. The Board affirmed the ALJ's finding

that IP had not engaged in disparate treatment in dismissing

Chicoine, Hamlin and Storer. The Board also sustained the

ALJ's holding that IP had wrongfully discharged Bilodeau and

ordered his reinstatement. However, the Board reversed the

ALJ's decision as to Flagg, finding his misconduct more

serious than that committed by any of the non-strikers. This

petition for review and cross-petition for enforcement

followed.

II.

Standard of Review

This court must enforce the Board's order if its

findings are supported by substantial evidence on the record

considered as a whole and if it correctly applied the law.

NLRB v. Acme Tile & Terrazzo Co., 984 F.2d 555, 556 (1st Cir.

1993). Substantial evidence "means such relevant evidence as

a reasonable mind might accept as adequate to support a

conclusion." NLRB v. Auciello Iron Works, Inc., 980 F.2d

804, 807 (1st Cir. 1992) (citations and internal quotations

omitted). We are compelled to review the Board's order with

considerable deference and "may not substitute [our] own

judgment for that of the Board when the choice is between two

-5-
5

fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been

before it de novo." Destileria Serrales, Inc. v. NLRB, 882

F.2d 19, 21 (1st Cir. 1989) (citations and internal

quotations omitted). Moreover, when this court reviews an

agency's credibility finding, "we must accept the finding

unless it exceeds `the bounds of reason.'" Boston Mut. Life

Ins. Co. v. NLRB, 692 F.2d 169, 170 (1st Cir. 1982) (quoting

P.S.C. Resources, Inc. v. NLRB, 576 F.2d 380, 382 (1st Cir.

1978)). Finally, "we need not limit ourselves to the exact

grounds for decision utilized below. We are free, on appeal,

to affirm a judgment on any independently sufficient ground."

Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st Cir.

1992) (quoting Polyplastics, Inc. v. Transconex, Inc., 827

F.2d 859, 860-61 (1st Cir. 1987)), cert. denied, 113 S. Ct.

1416 (1993).

III.

Conduct of Five Strikers and Non-Striker Barclay

Having carefully reviewed the ALJ's factual

findings, which were adopted by the Board, we find them

eminently supportable and therefore accept the ALJ's version

of the events. We summarize them as follows:

Non-striker Andrew Barclay: On July 30, 1987, Barclay
Non-striker Andrew Barclay
and his son, carrying baseball bats, confronted a group
of strikers who were attending a party near Barclay's
lakefront home. Barclay complained to the strikers
about being harassed and constantly called a "scab", and
told them that he and his son were there to "clean [the

-6-
6

strikers] all out."1 The strikers asked Barclay to
leave, but he did not. In an attempt to wrest the bat
from Barclay, striker Charles Fullerton received a cut
that required minor medical attention.

Striker Lawrence Bilodeau: On October 28, 1987,
Striker Lawrence Bilodeau
Bilodeau, returning home from work, passed the home of a
replacement worker. At the time, the worker was
standing in front of his house with his family.
Bilodeau then turned his truck around and stopped in
front of the worker's home. Bilodeau noticed that the
worker was writing down his license plate number, and
yelled "I've worked at the mill for twenty years, and
you ain't gonna be living here long you [expletive
deleted]. Go ahead and write down my license. I live
right around the corner."

Striker Lawrence Chicoine: On June 27, 1987, Chicoine
Striker Lawrence Chicoine
was picketing outside of the mill when he accosted one
non-striker and told her that he would kill her for
crossing the picket line. On July 1, 1987, Chicoine was
again picketing outside of the mill when he used a
megaphone to threaten a number of replacement workers as
they arrived for work that "he had a .44" and "would
blow [their] heads off."

Striker Forrest Flagg: On December 8, 1987, a
Striker Forrest Flagg
replacement worker drove by Flagg as Flagg picketed
outside of the mill. Flagg opened the passenger door of
the replacement worker's car, reached into the car, and
shouted "I'll kill you."

Striker Thomas Hamlin: On August 7, 1987, after
Striker Thomas Hamlin
consuming a large quantity of beer and smoking numerous
marijuana cigarettes, Hamlin got into a truck and
followed two groups of replacement workers as they
returned home from work. Hamlin harassed them and
attempted to run them off the road with his truck.

Striker Arthur Storer: On August 6, 1987, as a
Striker Arthur Storer
replacement worker exited the mill, Storer threw a

1. Barclay later told an IP employee who investigated the
incident that prior to this incident, a number of boats full
of strikers had pulled up in front of his home, and had blown
air horns, cursed, and threatened him and his family.
Barclay also claimed that the boats fired a projectile which
broke a window in his home, spraying glass over his son.

-7-
7

rock at her car, kicked the car, and then jumped on
the car's bumper.

IV.

Discussion

A. Disparate Treatment

The Union's principal contention is that IP engaged

in unlawful disparate treatment by discharging the five strikers

listed above for engaging in strike-related misconduct which was

less serious than misconduct committed by non-striker Barclay,

who was merely warned.2 The Board agreed with the Union as to

Bilodeau, but not as to the other four strikers. We agree with

the Board's conclusions.

Pursuant to 7 of the Act, "employees are granted

the right to peacefully strike, picket and engage in other

concerted activities for the purpose of collective bargaining."

NLRB v. Preterm, Inc., 784 F.2d 426, 429 (1st Cir. 1986).

Section 7 also allows employees the right to refrain from these

activities if they so desire. Id.

"At the end of an economic strike, an employer,

unless otherwise justified, must reinstate striking employees,

lest their discharge penalize the employees for exercising their

2. To prove disparate treatment, a discharged striker need
only show that his/her misconduct was less serious than that
of one non-striker who was not discharged. Here, the ALJ
deemed the conduct of Barclay to be the most serious of the
non-strikers who retained their jobs. Having carefully
reviewed the record, we agree with the ALJ's conclusion on
this question. Accordingly, we use Barclay's conduct as the
benchmark against which to measure the Union's disparate
treatment claims.

-8-
8

right to strike under 7 of the Act." Associated Grocers of New

England, Inc. v. NLRB, 562 F.2d 1333, 1335 (1st Cir. 1977). It

is well established that an employer is justified in discharging

a striking employee who engages in serious strike-related

misconduct. Preterm, 784 F.2d at 429; Associated Grocers, 562

F.2d at 1335. Behavior that "reasonably tend[s] to coerce or

intimidate non-striking employees in the exercise of their right

to refrain from strike activities" constitutes serious strike-

related misconduct and is cause for discharge as a matter of law.

Preterm, 784 F.2d at 429 (quoting Clear Pine Mouldings, 268

N.L.R.B. 1044, 1047 (1984), enforced mem., 765 F.2d 148 (9th Cir.

1985)). See also General Indus. Employees Union, Local 42 v.

NLRB, 951 F.2d 1308, 1314 (D.C. Cir. 1991) (similar); Newport

News Shipbuilding & Dry Dock Co. v. NLRB, 738 F.2d 1404, 1408

(4th Cir. 1984) (similar); Associated Grocers, 562 F.2d at 1336

(stressing the objective nature of the test).

Importantly, however, an employer may not knowingly

tolerate misconduct by non-strikers that is at least as serious

as, or more serious than, the misconduct of strikers whom the

employer has discharged. See Garrett R.R. Car & Equip. v. NLRB,

683 F.2d 731, 740 (3rd Cir. 1982) (holding that an employer

committed an unfair labor practice where it knew non-striking

employees were equally culpable of misconduct but chose to

discipline only strikers). In determining whether an employer

has discriminated against striking employees, a one-on-one

-9-
9

comparison between the acts of misconduct committed by the

strikers and those committed by non-strikers is appropriate. See

generally id. (comparing behavior of strikers with that of

employees who were not discharged).3

1. Strikers Chicoine, Flagg, Hamlin and Storer

The Board determined that, because the misconduct of

strikers Chicoine, Hamlin, Flagg and Storer was more serious than

the misconduct of non-striker Barclay, IP's decision to discharge

the four strikers did not constitute disparate treatment.

Essentially, the Board found that Barclay's behavior was

provoked, and hence less serious than the strikers' misconduct,

which, in each instance, was instigated by the striker.

We think that substantial evidence exists in the

record to support the Board's finding that Barclay was provoked.

Before confronting the strikers, Barclay had been harassed at his

home by a group of strikers. As we have observed, there was

evidence suggesting that strikers had blown air horns from their

boats in front of his house, shouted obscenities, threatened him,

and fired a projectile through his window, showering his son with

3. IP insists that because Barclay's misconduct was not
similar to any of the acts committed by the five strikers, it
is not appropriate for disparate treatment purposes to
compare their behavior with his. However, only the rarest of
disparate treatment cases would involve identical allegations
of misconduct. Adoption of IP's position would, therefore,
effectively foreclose disparate treatment analysis in the
vast majority of these kinds of cases. Because we find such
a requirement to be unduly stringent, we reject IP's
argument.

-10-
10

glass. It was only after these violent threats and acts that

Barclay confronted a group of strikers with a baseball bat and

angrily threatened them.

In contrast, the record is devoid of evidence

suggesting that the actions of strikers Chicoine, Flagg, Hamlin

and Storer had been provoked in any way. Although we do not

condone Barclay's conduct, we think the Board's conclusion that

his provoked behavior was less egregious than the unprovoked

actions of the four strikers was a reasonable one under the

circumstances. Accordingly, we uphold the Board's decision

rejecting the disparate treatment claims of Chicoine, Flagg,

Hamlin, and Storer.

2. Striker Bilodeau

The Board also adopted the ALJ's conclusion that the

misconduct of Barclay was more flagrant than that of Bilodeau,

and that IP therefore acted unlawfully by discharging Bilodeau

but merely issuing a warning to Barclay. The ALJ's conclusion

was based on his finding that (a) Barclay's threat was one of

physical injury and was therefore more serious than Bilodeau's

threat to property, and (b) Bilodeau's threat was "less than

explicit."

The major difference between the conduct of Bilodeau

and Barclay, in our view, is that Barclay made his threat with a

baseball bat in hand, and thus possessed an immediate ability to

act on the threat. Bilodeau, on the other hand, made his threat

-11-
11

while standing in the road in front of the replacement worker's

house, with no apparent ability or intent to immediately carry

out his threat. Record evidence, therefore, supports the ALJ's

conclusion that Barclay's behavior was more egregious than that

of Bilodeau. See Associated Grocers, 562 F.2d at 1336

(explaining that courts should evaluate threats in light of all

the surrounding circumstances).

B. Miscellaneous

The Union raises two subsidiary arguments, each of

which we find unpersuasive. First, the Union argues that,

because IP failed to obtain the strikers' first-hand accounts of

the incidents, it could not, as a matter of law, have fashioned

an honest belief that the strikers committed the misconduct for

which they were discharged. As the record reveals, however, a

number of eye-witnesses were present at each of the incidents.

In fact, two of the episodes were captured on videotape.

Further, evidence in the record supports a finding that IP relied

on these eye-witness accounts and the videotape. Thus, although

IP's understanding of the events would undoubtedly have been

fortified by interviews with each striker, we cannot say that the

failure to conduct striker interviews, given this direct

evidence, rendered their decision to discharge those strikers

unlawful.

The Union also argues that IP condoned the strikers'

conduct when it sent each striker a form letter on February 1,

-12-
12

March 24, and September 23, 1988, outlining the reinstatement

rights of striking employees. Condonation exists only when clear

and convincing evidence is present showing an employer's desire

"to forgive" the guilty employee for the misconduct. See Jones &

McKnight, Inc. v. NLRB, 445 F.2d 97, 103 (7th Cir. 1971). See

also Woodlawn Hosp. v. NLRB, 596 F.2d 1330, 1341 (7th Cir. 1979)

(holding that condonation exists only "where the employer has

clearly indicated forgiveness"). We agree with the ALJ's

conclusion, adopted by the Board, that a form letter sent to

approximately 1250 workers, informing the striking employees of

their statutory right to reinstatement under certain

circumstances, falls well short of clear and convincing evidence

that IP condoned the misconduct of the five strikers.4

Accordingly, the Union's condonation argument is unavailing.5

V.

Conclusion

Because we find that the Board correctly applied the

law and that substantial evidence in the record supports all of

the Board's findings, we grant enforcement of the Board's order

in its entirety.

4. Because we agree with the Board's conclusion that IP's
decision to discharge strikers Chicoine, Flagg, Hamlin and
Storer was not discriminatory, we need not reach IP's
alternative argument that the Union's claims as to those
strikers are time-barred under section 10(b) of the Act, 29
U.S.C. 160(b).

5. We have reviewed the remainder of IP's and the Union's
arguments and find them to be without merit.

-13-
13

Affirmed. No costs.

-14-
14