Thomas R. HARBERSON and Bill Talley, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

and

Hilton Hotels Corporation, d/b/a the Denver Hilton Hotel, Intervenor.

No. 84–2488.

United States Court of Appeals, Tenth Circuit.

Feb. 4, 1987.

Paul Alan Levy (Alan B. Morrison, of Public Citizen Litigation Group, Washington, D.C., with him on the briefs), Public Citizen Litigation Group, Washington, D.C., for petitioners.

Judith A. Dowd (Rosemary M. Collyer, General Counsel; John E. Higgins, Jr., Deputy General Counsel; Robert E. Allen, Associate General Counsel; and Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., with her on the brief), N.L.R.B., for respondent.

Before LOGAN, TACHA and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

In this case we review an order of the National Labor Relations Board (Board) in which the Board deferred to the decision of an arbitration panel in dismissing an unfair labor practice complaint against Hilton Hotels Corporation (Hilton). This case arises under the National Labor Relations Act, 29 U.S.C. §§ 151–169 (the Act). This court has jurisdiction over the case because the events in question occurred in Denver, Colorado. 29 U.S.C. § 160(f). The circumstances of this case raised both contract and unfair labor practice questions. The contract issue was resolved through arbitration. A hearing on the unfair labor practice issue was held before an Administrative Law Judge (ALJ) in which the ALJ rejected the argument that he should defer to the decision of the arbitrators on the contract claim. The Board concluded that the ALJ should have deferred to the arbitrators' decision. *Hilton Hotels Corp.*, 272 N.L.R.B. 488 (1984). We find that the Board has failed to provide adequate reasons for its decision, and we therefore remand for further consideration by the Board.

Hilton operates a large convention hotel in Denver, Colorado.[1] Most of Hilton's Denver employees are represented by the Hotel Employees and Restaurant Employees International Union in basic housekeeping, culinary and related job classifications. Hilton's engineers, carpenters, plumbers, painters and maintenance workers are represented by the International Union of Operating Engineers (IUOE). Its five electricians are represented by the International Brotherhood of Electrical Workers (IBEW). All three unions have collective bargaining agreements with Hilton. At the time of the events in question, Thomas Harberson and Bill Talley were members of the IBEW and worked as electricians in the maintenance department. Harberson's duties included electrical repair work, relamping, and running the control room. Talley was primarily engaged in repairing television sets, performing electrical maintenance work, and operating the control room amplifier and spot lights.

On July 1, 1982, the IUOE commenced an economic strike against Hilton. Some Hilton employees who were members of the other two unions, including Harberson and Talley, honored the IUOE picket line. Hilton continued its operations by relying upon its nonunion employees and by bringing in additional personnel from other facilities. On about July 6, Hilton began interviewing replacement job applicants for the maintenance department. Mike Bozic was hired on July 6 and began working for Hilton the next day. Tim Jude was hired on July 8 and began working for Hilton the same day. Bozic and Jude performed some general electrical maintenance work during the remainder of the strike.

On July 12, Hilton and the IUOE reached a strike settlement agreement which provided that all of the striking IUOE employees would be reinstated immediately. On the morning of July 13, Harberson and Talley reported to their supervisor, Robert Langdon. Langdon told the two employees that no work had been scheduled for either of them that day. He subsequently re-

---

**1.** The facts as presented here are drawn from the findings of the ALJ. Although the Board reversed the ALJ's decision on the deferral issue, it did not overrule any of the ALJ's factual findings. Since the Board did not reverse these findings, we take them as true for purposes of evaluating the Board's decision.

ferred them to the personnel office where they were told that they had been permanently replaced during the strike. On July 14, Hilton sent letters to Harberson and Talley informing them that, although work was unavailable at that time because they had been permanently replaced, their names had been placed on a preferential reinstatement list and they would be recalled as soon as positions for which they were qualified became available.

■ These events raised questions under the Act and under the contract between Hilton and the IBEW. Under § 7 of the Act, 29 U.S.C. § 157, employees have the right to engage in concerted activities including strikes (unless such activity is proscribed, for example, by a no-strike clause in a collective bargaining agreement). Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), forbids discrimination to discourage the exercise of the right to engage in concerted activities. Under the Act, an employer may not discharge striking employees. However, an employer may permanently replace employees engaged in a protected strike in order to continue operations. *NLRB v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 345–46, 58 S.Ct. 904, 910–11, 82 L.Ed. 1381 (1938). If an employer hires permanent replacements during an economic strike, striking workers are entitled only to preferential reinstatement as positions become available. *See id.* at 345–47, 58 S.Ct. at 910–11. If the employer does not hire permanent replacements during the strike, it must reinstate strikers as soon as they make an unconditional offer to return to work.

■ The collective bargaining agreement between Hilton and the IBEW provides that employees will not be "disciplined or discharged for refusal to cross a legally approved picket line...." Harberson and Talley were thus engaged in a protected activity when they honored the IUOE picket line. Therefore, under the Act, Hilton had the right to replace but not discharge them; if Hilton did not permanently re-

place them before the strike ended, Hilton potentially violated the Act by refusing to reinstate Harberson and Talley.

The events involving Harberson and Talley also presented a question under the contract between Hilton and the IBEW. The IBEW took the position that because the contract forbids "discipline or discharge" of sympathy strikers, Hilton had waived its right to permanently replace such employees. The IBEW argued that whether Harberson and Talley were permanently replaced does not matter because permanent replacement constitutes "discharge or discipline" which is forbidden under the contract, and therefore Harberson and Talley must be reinstated. Hilton argued that the contract allows it to permanently replace striking employees.

The IBEW filed contractual grievances on behalf of Harberson and Talley. Hilton denied the grievances and they were taken to arbitration before a three-member board of arbitration. The parties stipulated that the issue before the arbitrators was whether Harberson and Talley had been discharged in violation of the collective bargaining agreement. At the arbitration hearing, Hilton denied that it had discharged Harberson and Talley, and contended instead that it had lawfully replaced them and had a right to do so under the contract. The IBEW argued that Hilton's refusal to reinstate Harberson and Talley constituted discharge and is therefore prohibited under the contract.

The arbitrators first addressed the issue of whether Harberson and Talley had been discharged or whether they had been permanently replaced. At the hearing, Hilton's personnel director testified that Harberson and Talley continued to receive insurance and pension benefits and that their names had been placed on a preferential hiring list. The IBEW presented no evidence on the issue of whether the two employees had been discharged or permanently replaced.[2] The arbitrators conclud-

---

**2.** The IBEW presented no evidence on this issue because its position was that *both* discharge and

permanent replacement are forbidden under the contract. Therefore, it did not matter whether

ed from Hilton's letters to Harberson and Talley and the testimony of Hilton's personnel director that Harberson and Talley had not been discharged. The arbitrators did not make an explicit finding that Harberson and Talley had been permanently replaced; rather they assumed that the employees had been permanently replaced on the basis of Hilton's unrebutted evidence and as a direct corollary to the finding of no discharge.

The arbitrators then addressed the issue of whether Hilton had a right to permanently replace Harberson and Talley under the terms of the collective bargaining agreement. The arbitrators concluded that Harberson and Talley could not lawfully be discharged but that they could lawfully be permanently replaced under the contract. Accordingly, the arbitrator denied Harberson's and Talley's grievances, as presented by the IBEW, over Hilton's refusal to reinstate them.

In addition to the contractual grievances that IBEW filed on behalf of Harberson and Talley, the IBEW also filed an unfair labor practice claim with the Board's Regional Office.[3] After the arbitrators rendered their decision, Harberson personally filed an unfair labor practice charge. Harberson's claim was consolidated with the earlier claim filed by the IBEW and the Regional Director ordered a hearing before an Administrative Law Judge (ALJ).

At the hearing, Hilton contended that the Board should defer to the arbitrators' finding that Hilton had lawfully replaced Harberson and Talley. The ALJ, however, proceeded with a hearing on the merits of the unfair labor practice charge. At the hearing, both parties presented evidence on the issue of whether Harberson and Talley had been permanently replaced. On the basis of testimony of witnesses and numerous exhibits, the ALJ found that Bozic and Jude had been hired not as electrical workers but as maintenance workers, they had been given no expectation that their jobs would be permanent, and Hilton's records were altered after the fact to reflect otherwise. *Hilton Hotels Corp.*, 272 N.L.R.B. at 491 (decision of ALJ). The ALJ concluded that Hilton had not permanently replaced Harberson and Talley before the strike ended and had thus violated the Act by refusing to reinstate the employees.

The ALJ also addressed Hilton's argument that he should defer to the arbitrator's decision. The ALJ examined this issue in light of *Olin Corp.*, 268 N.L.R.B. 573 (1984), which is the Board's most recent articulation of the standard to be applied in deciding whether the Board should defer to an arbitrator's determination.

The Board has put forth various formulations as to when deferral is appropriate. The various formulations reflect the tension between the Board's responsibility to prevent and remedy unfair labor practices under § 10(a) of the Act, 29 U.S.C. § 160(a), and its mandate to encourage settlement of labor disputes through collective bargaining under § 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d).

In *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080, 1082 (1955), the Board ruled that an arbitration award could be recognized if (1) the proceedings appeared to have been fair, (2) all parties had agreed to be bound, and (3) the decision of the arbitrators was not clearly repugnant to the purposes and policies of the Act. In *Raytheon Co.*, 140 N.L.R.B. 883, 887 (1963), the Board added a further requirement. Deferral would be justified only if the unfair labor practice issue had been "fully and fairly litigated" before the arbitrators.

the employees were discharged or permanently replaced. Presumably, the IBEW took this position because a favorable decision by the arbitrators would benefit all IBEW members because the IBEW members would then have greater rights under the contract than they enjoy under the Act.

**3.** The Regional Office deferred action on the charge pending the outcome of the arbitration proceeding on the contractual grievances. The Regional Director subsequently notified the IBEW that it would proceed no further with the unfair labor practice charge because the arbitration award had resolved the issue.

In *Electronic Reproduction Service Corp.*, 213 N.L.R.B. 758 (1974), the Board changed the policy articulated in *Spielberg* and *Raytheon*. In *Electronic Reproduction*, the Board ruled that deferral was appropriate unless "special circumstances" precluded the grievant from a "full and fair opportunity" to present evidence of an unfair labor practice. *Id.* at 764. In other words, where an unfair labor practice issue could have been presented to the arbitrators but was not, the Board would defer to the arbitrators' decision absent special circumstances. This standard was criticized by courts, *see, e.g., Stephenson v. NLRB*, 550 F.2d 535, 537–41 (9th Cir.1977); *Banyard v. NLRB*, 505 F.2d 342, 345–48 (D.C. Cir.1974), and the Board expressly overruled *Electronic Reproduction* in *Suburban Motor Freight, Inc.*, 247 N.L.R.B. 146 (1980). The Board recognized that the *Electronic Reproduction* standard, while furthering the aim of encouraging collective bargaining, "derogates the equally important purpose of protecting employees in the exercise of their rights" and thus constituted an "unwarranted extension of the *Spielberg* doctrine and an impermissible delegation of the Board's exclusive jurisdiction under Section 10(a) of the Act to decide unfair labor practice issues." *Id.* at 146 (footnote omitted). In *Suburban Motor Freight*, the Board ruled that it would not defer to an arbitration decision "which bears no indication that the arbitrator ruled on the statutory issue." *Id.* at 147.

In *Olin Corp.*, 268 N.L.R.B. 573 (1984), the Board adopted yet another standard. The Board noted that the deferral standard under *Raytheon* and subsequent cases did not adequately encourage arbitration. In *Olin*, the Board expressly reaffirmed the *Spielberg* criteria and then further stated:

> [W]e adopt the following standard for deferral to arbitration awards. We would find that an arbitrator has adequately considered the unfair labor practice if (1) the contractual issue is factually parallel to the unfair labor practice

issue, and (2) the arbitrator was presented generally with the facts relevant to resolving the unfair labor practice. In this respect, differences, if any, between the contractual and statutory standards of review should be weighed by the Board as part of its determination under the *Spielberg* standards of whether an award is "clearly repugnant" to the Act. And, with regard to the inquiry into the "clearly repugnant" standard, we would not require an arbitrator's award to be totally consistent with Board precedent. Unless the award is "palpably wrong," i.e., unless the arbitrator's decision is not susceptible to an interpretation consistent with the Act, we will defer.

> Finally, we would require that the party seeking to have the Board reject deferral and consider the merits of a given case show that the above standards for deferral have not been met. Thus, the party seeking to have the Board ignore the determination of an arbitrator has the burden of affirmatively demonstrating the defects in the arbitral process or award.

*Id.* at 574 (footnotes omitted).[4]

The ALJ applied the *Olin* standard to the facts of the present case and concluded that deferral was not appropriate. He found that:

> [T]he 14 page award [of the arbitrators] covers several doctrines of labor law, alludes to the pending unfair labor practice charge, and expressly refers to Section 8(a)(3) of the Act. However, the Board of Arbitration did not in any remote way deal with the factual issue of whether certain new individuals actually assumed the established task patterns of the grievants and did so on a regular basis. This is separate and apart from my further express finding that Langdon has attempted to deceive respecting the true utilization of Bozic and Jude during the disordered days of early July, and he has proffered spurious records in the

---

**4.** In *Taylor v. NLRB*, 786 F.2d 1516 (11th Cir. 1986), the Eleventh Circuit rejected the *Olin* standard as impermissible under the Act because it did not sufficiently protect employees' rights under the Act.

process. For this reason the factual issue that was present in the arbitral process was dissimilar to that of the unfair labor practice charge, and was not in even a general way presented to the Board of arbitration. On this basis General Counsel has met the burden of demonstrating how this arbitral decision was not based on facts relevant to resolving the statutory claim.

The Board reversed the ALJ's decision and concluded that the ALJ should have deferred to the arbitrators' decision. The Board found that the contractual and unfair labor practice issues were "factually parallel" because resolution of both issues "was contingent on the factual finding of whether Harberson and Talley had been permanently replaced during the strike." *Hilton Hotels Corp.*, 272 N.L.R.B. at 488. The Board also found that the arbitrators had been presented generally with the facts relevant to the unfair labor practice charge because Hilton's personnel director had testified that Bozic and Jude had performed electrical work, Hilton continued to carry the two employees on the payroll and Hilton had informed them they had been permanently replaced. The Board therefore concluded that the General Counsel had failed to carry his burden of showing "that the arbitrators were not presented generally with the relevant facts pertaining to the question of whether Harberson and Talley had been permanently replaced." *Id.* at 489.

■ The Board's factual findings are to be accepted by a reviewing court if they are supported by substantial evidence in the record considered as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Glaziers Local Union 558 v. NLRB*, 787 F.2d 1406, 1411 (10th Cir.1986); *Pennypower Shopping News, Inc. v. NLRB*, 726 F.2d 626, 629 (10th Cir.1984); *U.S. Soil Conditioning v. NLRB*, 606 F.2d 940, 943 (10th Cir.1979). The standard of review is not altered when the ALJ and the Board reach contrary conclusions. *Universal Camera*, 340 U.S. at 496, 71 S.Ct. at 468;

*Glaziers Local Union*, 787 F.2d at 1411; *Pennypower*, 726 F.2d at 629; *U.S. Soil Conditioning*, 606 F.2d at 943-44. However, the ALJ's findings, whether they contradict or support the Board's determination, are part of the record and must be considered. *Universal Camera*, 340 U.S. at 492-97, 71 S.Ct. at 466-69.

In the present case, the ALJ applied the *Olin* standard to the deferral question and found that deferral was not appropriate. The ALJ considered the question of whether Hilton acted to replace Harberson and Talley before or after they reported for work following the strike. The ALJ made extensive findings of fact and concluded that the permanent replacement of Harberson and Talley occurred *after* they reported for work. Because this factual question was crucial to the unfair labor practice claim and had not been resolved by the arbitrators, the ALJ found that deferral was not appropriate under *Olin*.

The Board disagreed; it noted only that the resolution of both the contract and the statutory claims depended on a finding of whether the employees had been replaced during the strike and pointed to the testimony of Hilton's personnel director as generally presenting to the arbitrators the facts relevant to resolving the unfair labor practice question. The Board, however, did not address the factual question that the ALJ considered dispositive: whether Hilton acted to replace Harberson and Talley before or after they reported for work. The Board did not respond to the ALJ's findings except to say that he erred in failing to defer.

■ The ALJ's interpretation of the *Olin* standard as applied to the facts of the present case seems reasonable. Considering that the IBEW did not litigate the unfair labor practice issue before the arbitrator, both sides presented a substantial amount of evidence on this issue at the hearing before the ALJ, and the ALJ found the evidence supporting the employees' position to be compelling, the finding of the ALJ that the facts were not generally presented to the arbitrator on the unfair

labor practice question is particularly well supported. In view of this finding by the ALJ, we cannot say that the Board's decision is supported by substantial evidence on the record as a whole. Although the ALJ's findings are not conclusive and may be rejected by the Board, they cannot be ignored. *Universal Camera,* 340 U.S. at 492–96, 71 S.Ct. at 466–68; *Decker v. SEC,* 631 F.2d 1380, 1386 (10th Cir.1980). The Board must accord them due weight in making its decision. *Id.*

■■■■ Moreover, the Board has failed to articulate adequately its reasons for rejecting the ALJ's decision. It is an elementary principle of administrative law that an administrative agency must provide reasons for its decisions. *SEC v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943); *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271 (1941). Applied to the present case, this principle requires the Board to give reasons for rejecting the ALJ's opinion. *UAW v. NLRB,* 802 F.2d 969, 975 (7th Cir.1986). The Board's decision leaves unclear why the ALJ's decision was rejected. The Board referred to no facts in the record inconsistent with the ALJ's finding. Nor did the Board indicate that it found that the ALJ's finding was not adequately supported.

When applied to a particular factual situation, the standard for deferral set out in *Olin* may be interpreted in various ways. The ALJ's interpretation of the *Olin* standard is a reasonable one. The Board may have based its decision on a different interpretation, but no such interpretation is evident from the Board's opinion. We cannot supply an interpretation of the *Olin* standard to uphold the Board when the Board has not provided that interpretation. *Chenery Corp.,* 318 U.S. at 95, 63 S.Ct. at 462. We therefore do not address the issue of whether the *Olin* standard as applied by the Board is permissible under the Act. We set aside the decision and remand the case to the Board for further consideration. *Darr v. NLRB,* 801 F.2d 1404 (D.C.Cir. 1986) (remanding a case to the Board for further consideration and explanation of the reasons for deferring to an arbitrator's award). On remand the Board must give some explanation of the reasoning underlying its decision. Simply citing *Olin* without indicating how the standard applies in a particular case is not sufficient especially where the ALJ has applied the standard and reached a contrary result.

REMANDED.