**MEDITE OF NEW MEXICO,
INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

Perry R. Salazar; Leroy Cordova; Arturo Tafoya; Max Salazar; Benny Coca; William Cordova; Karl Mueller; Pete Montano; Homer Jones; Feliverto A. Casias; Manuel Sanchez; George Montoya, Intervenors.

No. 94–9575.

United States Court of Appeals,
Tenth Circuit.

Dec. 7, 1995.

Nicholas J. Noeding (Margaret R. McNett, with him on the briefs), Hinkle, Cox, Eaton, Coffield & Hensley, Albuquerque, New Mexico, for Petitioner.

Steven F. Rappaport (Linda Dreeben, Supervisory Attorney; Frederick L. Feinstein, General Counsel; Linda Sher, Acting Associate General Counsel; and Aileen A. Armstrong, Deputy Associate General Counsel, with him on the brief), National Labor Relations Board, Washington, D.C., for Respondent.

Craig B. Fretwell, Northern New Mexico Legal Services, Las Vegas, New Mexico, for Intervenors.

Before ANDERSON, HENRY, and BRISCOE, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Petitioner Medite of New Mexico, Inc., seeks review of an order of the National Labor Relations Board ("Board") affirming in part, reversing in part and modifying the recommended Order of an Administrative Law Judge ("ALJ"), which found Medite had committed certain violations of the National Labor Relations Act ("Act") in connection with an economic strike at its plant. The Board has filed a Cross–Petition seeking enforcement of its order. We deny review and enforce the order.

## BACKGROUND

Medite operates a fiberboard manufacturing plant in Las Vegas, New Mexico. Following an election, the Western Council of Industrial Workers ("Union") became the exclusive bargaining agent for the production and maintenance employees at the facility. When Medite and the Union were unable to reach a collective bargaining agreement, 60 of Medite's 103 employees began an economic strike on June 11, 1990. Among the strikers were employees Feliverto Casias, Benny Coca, Leroy Cordova, William Cordova, Homer Jones, Pete Montano, George Montoya, Karl Mueller, Max Salazar, Perry Salazar, Manuel Sanchez, and Arturo Tafoya.[1] Medite notified all strikers that they would be permanently replaced if they did not return to work. By the end of June, all strikers had been permanently replaced.

During the strike, a picket line was established along the sides of the road leading to the main entrance to Medite's plant. A number of incidents occurred in connection with the picket line and the strike which are detailed, as necessary, more fully below.

On October 24, the Union was decertified and the strike ended. When the strike and picketing ended, the Medite plant manager issued an order barring former strikers from entering the plant except for escorted access to claim personal items. In November and December of 1990, Casias, Coca, Leroy Cor-

1. For convenience, we sometimes refer to these individuals by name, and sometimes refer to them collectively as the "Charging Parties."

dova, William Cordova, Jones, Montano, Montoya, Max Salazar, Perry Salazar, and Tafoya each sent to Medite letters seeking reinstatement. Mueller did not make a formal request for reinstatement until September 17, 1991. Sanchez applied orally for reinstatement in mid-November by telephoning Medite's personnel director, James D. Stone. All but Mueller received the following response from Medite:

As you probably know, after you went on "strike" a replacement was hired to fill your position. Therefore, we are unable to return you to work.

In September, 1991, Medite posted a notice for employees to bid on a cutoff saw helper position, and selected Richard Martinez, who had been hired during the strike as a laborer, promoted to cutoff saw helper, and then returned to a laborer position after the strike ended. Medite did not offer the position to former striker Montano, who had worked as a cutoff saw helper when the strike began.

On four other occasions between March and November 1991, Medite filled vacant bander positions in the same way (promoting laborers hired during the strike) rather than offering to reinstate former striker Max Salazar, who had worked as a bander when the strike began. Former striker Tafoya had been a saw forklift operator when the strike began. In June 1991 and in April 1992 Medite promoted replacement laborers to fill vacant sander forklift operator positions. It did not offer either position to Tafoya. Former striker Perry Salazar had been a utility employee prior to the strike. Medite notified him in July 1991 that there was a vacant utility position. When Salazar told personnel director Stone that he wished to return to work, Stone told him to come to the plant on August 5. When he arrived on that date, Stone told Salazar that Medite had decided not to reinstate him because of his involvement in misconduct during the strike.

In August 1991, Medite sent the following letter to former striker Mueller, who had been a laborer when the strike began:

A job opening exists at the plant in the Laborer position classification. There are several eligible persons who may be eligible to fill this job. If you are interested in filling this position, please contact the undersigned (Personnel Manager Stone) on or before 4:00 PM on Tuesday, August 27, 1991.

If you do not contact us by this date, the Company will assume that you are not interested in reinstatement, and the position will be offered to another person.

Mueller signed a receipt acknowledging that he had received the August 21 letter on August 23. He did not contact Stone until September 3, at which time he telephoned Stone and told him he was interested in reinstatement. Stone told him that Medite had considered him uninterested in the job described in the letter since he had not responded by the date stated therein. Mueller thereafter wrote to Stone stating that he wished to return to work, and asking to be offered any future positions.

Medite never offered reinstatement to Casias, Coca, Leroy Cordova, William Cordova, Jones, Montano, Montoya, Sanchez, Max Salazar, or Tafoya. Except for the above contacts with Mueller and Perry Salazar, Medite has never offered reinstatement to either of them.

On August 13, 1991, Perry Salazar filed a charge with the Board, alleging that Medite violated Section 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3), by failing to reinstate him. On January 14, 1992, Leroy Cordova, Tafoya, Max Salazar, Coca, William Cordova, Mueller, Montano, Jones, Casias, Sanchez, and Montoya all filed similar charges. The cases were consolidated and an ALJ conducted a hearing, following which the ALJ concluded that Medite had violated the Act by failing to reinstate Montano, Mueller, Max Salazar, Perry Salazar, and Tafoya; that Medite did not violate the Act by failing to reinstate Casias, Coca, Leroy Cordova, William Cordova, Jones, Montoya, and Sanchez because there were no vacancies in the positions that they had held prior to the strike, or in substantially equivalent positions; that Medite did not violate the Act by failing to allow Leroy Cordova, Jones, Casias, and Sanchez the opportunity to bid on vacancies posted by

Medite that were open to bidding by all Medite employees.

A three-member panel of the Board reviewed the ALJ's recommended Order, and affirmed in part, reversed in part and modified the Order. It agreed with the ALJ's finding that Medite violated the Act by failing to reinstate Montano, Mueller, Max Salazar, Perry Salazar, and Tafoya, and that Medite did not violate the act by failing to reinstate Casias, Coca, Leroy Cordova, William Cordova, Jones, Montoya, and Sanchez. It reversed the ALJ, however, and concluded that Medite had violated the Act by failing to allow Leroy Cordova, Jones, Casias, and Sanchez the opportunity to bid on vacancies which Medite posted in its plant. The Board also remanded to the ALJ to determine whether William Cordova had effectively resigned from Medite and to determine whether Coca and Montoya had engaged in strike misconduct or, if they did, whether the misconduct was serious enough for them to lose the Act's protections. The Board's order requires Medite to cease and desist from engaging in the unfair labor practices; to reinstate Montano, Mueller, Max Salazar, Perry Salazar, and Tafoya and make them whole; to offer reinstatement and back pay to Leroy Cordova, Jones, Casias, and Sanchez if at the compliance stage of the proceedings it is determined that they were denied reinstatement because of Medite's failure to allow them to bid on job vacancies; and to post an appropriate notice. This petition followed.

Medite argues we should deny enforcement of the Board's Order because: (1) it was denied a fair hearing when the ALJ failed to sequester the General Counsel's witnesses while they testified about common events and when the ALJ failed to admit into evidence a videotape of certain picket line misconduct; (2) the General Counsel failed to satisfy his burden of proving that vacancies occurred into which Medite was obligated to reinstate certain of the strikers; (3) the Board erred in holding that Medite discriminated against former strikers in filling certain job vacancies; and (4) the Board misapplied the law regarding reinstatement of strikers who engaged in misconduct during the strike. Medite also argues it committed no violation with regard to Mueller.

## DISCUSSION

Our standard for reviewing an order of the Board is clear: while we review legal determinations de novo, our standard for reviewing factual determinations is governed by 29 U.S.C. § 160(e), which states that "findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e); *Facet Enters., Inc. v. NLRB*, 907 F.2d 963, 969 (10th Cir. 1990). The Supreme Court has described substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *see also Facet Enters.*, 907 F.2d at 969; *Lear Siegler, Inc. v. NLRB*, 890 F.2d 1573, 1575 (10th Cir.1989) ("Substantial evidence ... is more than a mere scintilla of proof."). Thus, if substantial evidence in the record supports the Board's conclusions, we must affirm them, even though we might reach a different result were we reviewing the record de novo. *Facet Enters.*, 907 F.2d at 969; *see also NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1962) (reviewing court "may not 'displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo'") (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)); *NLRB v. Augusta Bakery Corp.*, 957 F.2d 1467, 1471 (7th Cir.1992); *Lear Siegler, Inc.*, 890 F.2d at 1575. "The standard of review is not altered when the ALJ and the Board reach contrary conclusions." *Harberson v. NLRB*, 810 F.2d 977, 983 (10th Cir. 1987). However, the record includes the ALJ's findings, "whether they contradict or support the Board's determination." *Id.*

### I. Evidentiary Errors

Medite argues it was denied a fair hearing because of claimed evidentiary errors committed by the ALJ. By statute, proceedings

before the Board and ALJ are to be conducted "as far as practicable" in accordance with the Federal Rules of Evidence. 29 U.S.C. § 160(b); see Augusta Bakery Corp., 957 F.2d at 1479. Medite argues the ALJ failed to exclude the General Counsel's witnesses while they testified about common events and he failed to admit into evidence a videotape of claimed striker misconduct·on the picket line.

### A. Exclusion of Witnesses

■ Fed.R.Evid. 615 provides in part:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person....

Medite invoked this provision at the beginning of the hearing, in an attempt to have the Charging Parties excluded when each testified about common events. The ALJ denied the request, finding that the "charging parties, as parties, should have a right to hear everything that takes place in the proceeding." Pet'r's App. at 26. The Board held that the ALJ "erred in failing to sequester the General Counsel's witnesses, including the Charging Parties, during the proceeding pursuant to Unga Painting, 237 NLRB 1306 [1978 WL 7956] (1978)." Medite of New Mexico, Inc., 314 NLRB 1145 n. 3, 1994 WL 508144 (1994). It further concluded, however, that Medite "was not prejudiced in the presentation of its case regarding its failure to reinstate M. Salazar, P. Salazar and A. Tafoya." Id. at 1148. With respect to its remand for findings on Coca's and Montoya's alleged strike misconduct, it directed the ALJ "not to rely on evidence tainted by the failure to sequester the General Counsel's witnesses." Id.

We agree with the Board that the ALJ's decision not to exclude any of the General Counsel's witnesses violated the Board's sequestration policy as set forth in Unga Painting.[2] However, it also clear that, unless Medite demonstrates prejudice from the failure to exclude, we need not reverse the Board's decision. See Curlee Clothing Co. v. NLRB, 607 F.2d 1213, 1215 (8th Cir.1979) ("Absent a showing of prejudice, we need not set aside the Board's decision."); L.S. Ayres & Co. v. NLRB, 551 F.2d 586, 588 (4th Cir.1977); Chauffeurs, Teamsters and Helpers Local Union No. 776, 313 NLRB 1148, 1994 WL 171786 (1994); Unga Painting Corp., 237 NLRB 1306.

Medite argues the failure to exclude prejudiced its presentation of evidence concerning strike misconduct by Coca, Montoya, Max Salazar, Perry Salazar and Tafoya. The Board disagreed, finding that Max Salazar only testified to events involving himself; its findings regarding alleged misconduct by Perry Salazar and Tafoya were "based in part on the testimony of the Respondent's [Medite's] witnesses—not merely on the testimony of the General Counsel's witnesses" and partly on a determination as to Tafoya's credibility. Medite of New Mexico, Inc., 314 NLRB at 1149. Concluding further that the ALJ's findings regarding Tafoya's and Perry Salazar's alleged misconduct were supported by Medite's own witnesses, the Board determined that Medite suffered no prejudice in the presentation of its case against those two strikers.

After carefully reviewing the record, we agree with the Board's determination that Medite suffered no prejudice in connection with Max Salazar, Perry Salazar and Tafoya. See Unga Painting, 237 NLRB at 1308. Because the Board remanded the issues of Coca's and Montoya's misconduct with di-

2. In Unga Painting, the Board balanced the need of Charging Parties, or discriminatees, to be present during proceedings with the need for exclusion of witnesses, at times, to maximize the reliability of testimony, and adopted a rule of limited exclusion of discriminatees:

[A]lleged discriminatees should be excluded only during that portion of the hearing when another of the General Counsel's or charging party's witnesses is testifying about events to which the discriminatees have testified, or will or may testify, either in the case-in-chief or on rebuttal, unless, in the judgment of the Administrative Law Judge, there are special circumstances warranting the unrestricted presence of discriminatees or total exclusion when not testifying.

Unga Painting, 237 NLRB at 1307 (footnotes omitted).

rections "not to rely on evidence tainted by the failure to sequester," we need not address those issues further.

## B. *Exclusion of Videotape*

■ Medite also argues the ALJ erred in excluding its proffered videotape which it argues demonstrates serious misconduct by Tafoya on the picket line. The Board upheld the ALJ's exclusion, stating:

> We find that the judge properly excluded the videotape because an inadequate foundation was laid for its admission. The Respondent proffered the videotape during R. Cordova's testimony. R. Cordova was a guard at the plant and he videotaped the ... incident. The proffered videotape, however, was edited prior to the trial by someone other than R. Cordova, and R. Cordova was unable to testify regarding how the tape was edited. For this reason, we agree with the judge that the tape was inadmissible.

*Medite of New Mexico, Inc.*, 314 NLRB at 1146 n. 7. The Board further concluded that Medite suffered no prejudice from the exclusion of the videotape, because the ALJ indicated that, based on his viewing of the videotape, it did not demonstrate that Tafoya had engaged in misconduct, and that finding was supported by Medite's witnesses.

The Ninth Circuit recently observed that "[i]n deciding whether to enforce the Board's decision, we assess whether the Board's evidentiary rulings were correct." *NLRB v. Bakers of Paris, Inc.*, 929 F.2d 1427, 1434 (9th Cir.1991). "Ordinarily, this is a matter of determining whether the Board properly applied the federal rules of evidence." *Id.; see also Carpenter Sprinkler Corp. v. NLRB*, 605 F.2d 60, 66 (2d Cir.1979) ("[I]t is up to the courts of appeals to review evidentiary rulings of the Board, and to determine the extent to which rules of Board proceedings must conform to the rules of the federal courts."). We have stated that "'[m]otion pictures ... must be premised by a foundation of accuracy and fairness.'" *Bannister v. Town of Noble*, 812 F.2d 1265, 1269 (10th Cir.1987) (quoting *Sanchez v. Denver & Rio Grande W R.R. Co.*, 538 F.2d 304, 306 n. 1 (10th Cir.1976), *cert. denied*, 429 U.S. 1042,

97 S.Ct. 742, 50 L.Ed.2d 754 (1977)). Medite does not dispute the Board's finding that someone other than the maker of the tape, R. Cordova, edited the tape prior to trial and that Cordova was unable to testify as to how it was edited. We agree with the Board that there was an inadequate foundation of accuracy. *See United States v. Roach*, 28 F.3d 729, 733 (8th Cir.1994) (holding that, as part of foundational guidelines for the admission of electronic tape recordings, proponent must show that no "changes, additions, or deletions have ... been made in the recording").

## II. *Striker Reinstatement Issues*

■ Medite raises a number of issues relating to its conduct involving and obligations toward the former strikers. Section 7 of the Act, 29 U.S.C. § 157, gives employees the right to strike. Economic strikers retain their status as "employees" under the Act. 29 U.S.C. § 152(3). *See NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378, 88 S.Ct. 543, 545, 19 L.Ed.2d 614 (1967); *NLRB v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 345, 58 S.Ct. 904, 910, 82 L.Ed. 1381 (1938); *Augusta Bakery Corp.*, 957 F.2d at 1471. Once an economic striker offers unconditionally to return to work, he is entitled to immediate reinstatement in his former job or, if that is unavailable, in a substantially equivalent job, unless the employer can show a "legitimate and substantial business justification[ ]" for refusing to reinstate him. *Fleetwood Trailer Co.*, 389 U.S. at 378, 88 S.Ct. at 545; *see also Gibson Greetings, Inc. v. NLRB*, 53 F.3d 385, 389 (D.C.Cir.1995); *NLRB v. Fire Alert Co.*, 566 F.2d 696, 697 (10th Cir.1977); *Laidlaw Corp.*, 171 NLRB 1366 (1968), *enf'd*, 414 F.2d 99 (7th Cir.1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970). If an employer has replaced a striking employee with a permanent employee during the strike, that constitutes a legitimate and substantial business justification. *Fleetwood Trailer Co.*, 389 U.S. at 379, 88 S.Ct. at 546.

## A. *Occurrence of Vacancies*

The Board held that Medite violated the Act by failing to offer reinstatement to Tafoya and Montano in their pre-strike positions or substantially similar provisions. Medite

argues that the General Counsel failed to satisfy his burden of proving the existence of such positions.

Prior to the strike, Montano worked as a cutoff saw helper. He tendered his unconditional offer to return to work on December 4, 1990. During the strike, Medite hired Richard Martinez as a laborer. He was promoted to cutoff saw helper on November 13, 1990. He was then demoted to the position of laborer, and again promoted to the position of cutoff saw helper on September 20, 1991. Medite did not offer to Montano the cutoff saw helper position filled by Martinez on September 20, 1991, although Medite had received Montano's unconditional offer to return to work.

■ The Board has attempted to balance the rights of employees and employers in strike situations "by allowing replacement workers to be kept on permanently (in order to give the replacement workers adequate incentive to take replacement jobs), but by requiring *genuine vacancies* in the workforce to be given, in line of seniority, to the striking workers after the strike is over." *Aqua–Chem, Inc., Cleaver–Brooks Div. v. NLRB*, 910 F.2d 1487, 1489 (7th Cir.1990), *cert. denied*, 501 U.S. 1238, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991); *Laidlaw Corp.*, 171 NLRB 1366 (1968), *enf'd*, 414 F.2d 99 (7th Cir.1969). A "genuine vacancy" (also known as a *"Laidlaw* vacancy") arises when "the company expands its workforce or discharges a particular employee, or when an employee quits or otherwise leaves the company." *NLRB v. Delta–Macon Brick and Tile Co.*, 943 F.2d 567, 572 (5th Cir.1991). A genuine vacancy does not occur, however, where the company temporarily lays off a replacement worker, as long as the laid-off worker has a "reasonable expectancy of recall." *Aqua–Chem Inc.*, 910 F.2d at 1490.[3] The burden is on the General Counsel to "first establish a prima facie case that the layoff truly signified [a *Laidlaw* vacancy]." *Aqua–Chem*, 288 NLRB at 1109.

■ Medite argues that, under *Aqua–Chem*, the General Counsel failed to establish that Martinez had no reasonable expectancy of recall. The ALJ and the Board rejected this argument, stating:

This case is distinguishable from *Aqua–Chem* because Martinez was not laid off from a position but was demoted from the cutoff saw helper position to the position of laborer. Further, when the September 20, 1991 vacancy occurred, Martinez was not automatically awarded the job. Instead, [Medite] posted the vacancy for bid by all of the employees. This contradicts [Medite's] contention that Martinez could reasonably expect to be returned to that position and that therefore no real vacancy existed.

*Medite of New Mexico, Inc.*, 314 NLRB at 1147. Medite claims there is no support in the record for this finding.

This is a factual matter, and we review the Board's conclusion only to see if substantial evidence in the record supports it. "It is the primary responsibility of the Board and not of the courts 'to strike the proper balance between the asserted business justification and the invasion of employee rights in light of the Act and its policy.'" *Fleetwood Trailer*, 389 U.S. at 378, 88 S.Ct. at 546 (quoting *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 33–34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967)). After reviewing the record, we find there is substantial evidence in the record supporting the Board's conclusion.

■ Tafoya had worked prior to the strike as a saw forklift operator. He tendered his unconditional offer to return to work on November 14, 1990. On June 6, 1991, and on April 1, 1992, two workers hired as laborers during the strike were promoted to the position of sander forklift operator. The ALJ made the following findings concerning the comparability of the positions of saw forklift operator and sander forklift operator:

The forklift used by a saw forklift operator is smaller and its operator handles

---

**3.** The Board has held that "factors relevant to the replacements' reasonable expectancy of recall would include, inter alia, evidence concerning the employer's past business experience, the employer's future plans, the length of the layoff, the circumstances of the layoff, and what the employee was told regarding the likelihood of recall." *Aqua–Chem, Inc, Cleaver Brooks Div.*, 288 NLRB 1108, 1110, 1988 WL 214299 (1988), *enf'd*, 910 F.2d 1487 (7th Cir.1990).

smaller panels that the forklift operated by the sander forklift operator. I nevertheless find and conclude the controls and operation of the two forklifts is substantially equivalent and note the sander forklift operator services the in-line saw as well as the sander.

*Medite of New Mexico, Inc.,* 314 NLRB at 1161. The Board affirmed the ALJ's conclusion that the two positions were substantially equivalent, and Medite therefore violated the Act by failing to reinstate Tafoya into one of the sander forklift vacancies. After reviewing the record, we find that there is substantial evidence to support the Board's conclusion.

### B. *Discrimination Against Certain Strikers*

The ALJ and the Board found that vacancies did not occur in the pre-strike jobs held by Casias, Coca, L. Cordova, W. Cordova, Jones, Montoya or Sanchez, or in substantially equivalent jobs. However, while the ALJ held that Medite committed no violation of the Act in failing to allow them to bid on job vacancies posted in the plant, the Board held that Medite "violated the Act by failing to allow L. Cordova, H. Jones, F. Casias, and M. Sanchez an opportunity to bid on vacancies posted by [Medite] that were open to bidding by all of its employees regardless of their current job or, as in the case of the strikers, their past jobs." *Id.* at 1145.[4]

■ The Board has held that "an employer's obligation to reinstate former economic strikers extends only to vacancies created by the departure of replacements from the striker's former jobs and to vacancies in substantially equivalent jobs, but not to any other job which a former striker is or may be qualified to perform." *Rose Printing Co.,* 304 NLRB 1076, 1991 WL 197152 (1991). However, an employer may not discriminate against former strikers: "strikers who have unconditionally offered to return to work are to be treated the same as they would have been had they not withheld their service.

They are therefore entitled to return to those jobs or substantial equivalents if such positions become vacant, and *they are entitled to nondiscriminatory treatment in their applications for other jobs." Id.* at 1078 (emphasis added).

■ The Board made the following findings concerning Medite's hiring practices:

[Medite] fills job vacancies in two ways. Vacancies in certain job groups are filled by automatically promoting employees within a set progression. The remaining vacancies are filled through a bid procedure in which the vacancy is posted on a bulletin board for 5 days and any full-time active employee is permitted to bid for the job. Employees are allowed to bid on, and have been awarded, less skilled and lower paying jobs. The jobs are usually awarded to the most senior applicant, although the applicant's qualifications are also considered. The successful applicant is given a 30–day trial period in the new position, and, if he is not performing satisfactorily, [Medite] will either agree to extend the trial period or will move the employee back to his former position.

*Medite of New Mexico, Inc.,* 314 NLRB at 1147.

Former strikers were not allowed into the plant, except for escorted access to pick up personal belongings. Medite did not notify them of posted job vacancies. The Board held that, under *Rose Printing,* Medite's "failure to allow the former strikers to bid on the vacancies posted for bid—a right extended to all other of its employees—constituted a form of discrimination against the former strikers." *Id.* at 1148. To avoid such discrimination, Medite must give former strikers who have unconditionally offered to return to work "notice of job postings and ... an opportunity to bid on, and be fairly considered for, those posted jobs." *Id.* The Board thus appears to have required Medite to either notify the strikers of posted job vacancies, or permit them access to the plant where such vacancies are posted.

4. The Board further held that its conclusion would also apply to William Cordova, if the ALJ on remand found that he had not effectively resigned from the company, and to Coca and Montoya if on remand the ALJ found that they did not engage in serious strike misconduct. Those remanded issues are not before us in this appeal.

Medite argues this is contrary to Board precedents, because it imposes a new "duty to seek out and inform strikers of nonequivalent openings." Pet'r's Br. at 27. Medite overstates the scope of the Board's order. The Board does not require Medite to affirmatively seek out all former strikers and notify them of each job vacancy. The Board has simply acknowledged that, as former strikers, all of whom tendered unconditional offers to return to work, they were entitled to be treated the same as other employees.[5] Other employees had access to posted job vacancies; these particular employees (the former strikers) did not.[6] That different treatment constitutes discrimination, prohibited under *Rose Printing*.

## C. *Striker Misconduct*

■ As indicated, striking employees who engage in serious misconduct while on strike lose the protections of the Act and are not entitled to reinstatement after the strike ends. "Of course, an employer's determination not to reinstate a striker must be based on evidence that the striker personally engaged in strike misconduct." *Midwest Solvents, Inc. v. NLRB*, 696 F.2d 763, 765 (10th Cir.1982); *see Augusta Bakery Corp.*, 957 F.2d at 1477 ("To lawfully deny an employee reinstatement at the conclusion of the strike on this ground, an employer must produce evidence connecting the discharged employees to specific strike misconduct."). The misconduct "must have had a tendency to coerce other employees in the exercise of their protected rights." *Richmond Recording Corp. v. NLRB*, 836 F.2d 289, 295 (7th Cir.1987); *see also Clear Pine Mouldings, Inc.*, 268 NLRB 1044, 1046, 1984 WL 36067 (1984) (stating that standard is "whether the

misconduct is such that, under the circumstances existing, it may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act.") (quoting *NLRB v. W.C. McQuaide, Inc.*, 552 F.2d 519, 528 (3d Cir.1977)), *enf'd without opinion*, 765 F.2d 148 (9th Cir.1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986). In addition, " '[t]he honest belief of an employer that striking employees have engaged in misconduct provides an adequate defense to a charge of discrimination in refusing to reinstate such employees, unless it affirmatively appears that such misconduct did not in fact occur.' " *Augusta Bakery Corp.*, 957 F.2d at 1477 (quoting *Rubin Bros. Footwear, Inc.*, 99 NLRB 610, 611 (1952)). The Board has rejected a "per se rule that words alone can never warrant a denial of reinstatement in the absence of physical acts." *Clear Pine Mouldings, Inc.* 268 NLRB at 1046 (1984).

■ The General Counsel bears the burden of establishing a prima facie case that the strikers were denied reinstatement for strike-related misconduct. *Clougherty Packing Co.*, 292 NLRB 1139, 1989 WL 223866 (1989). The employer may then defend its decision not to reinstate by showing it had an "honest belief" that the strikers had engaged in misconduct. *Augusta Bakery Corp.*, 957 F.2d at 1477. The burden then shifts back to the General Counsel to prove that no misconduct occurred. *Schreiber Mfg., Inc. v. NLRB*, 725 F.2d 413, 415 (6th Cir.1984); *Clougherty Packing Co.*, 292 NLRB 1139.

Medite argues that Perry Salazar and Tafoya both engaged in serious misconduct during the strike, and that the Board erred in finding that Medite "violated that Act when it failed to reinstate these former strikers

---

5. Medite argues that the scope of the letters seeking reinstatement limits the former strikers to only obtaining reinstatement in their pre-strike positions or substantially equivalent positions. That argument confuses the obligation to reinstate former strikers with the obligation under *Rose Printing* to treat them nondiscriminatorily in their applications for other jobs. Moreover, we do not read the letters themselves as narrowly as Medite. They each sought "reinstate[ment] in my job." We do not view that language as expressly limiting the former strikers' interest to only their former positions.

6. Medite argues that because it "experienced violence and sabotage during the strike," its decision to prohibit former strikers from the plant was prudent. There is no suggestion that violence and sabotage continued after the strike ended. There is also no evidence in the record connecting the charging parties to particular acts of violence, except as discussed *infra*. Furthermore, nothing in the Board's order limits Medite in reasonably selecting multiple posting sites, one or some of which do not require any significant plant access.

because ... the conduct engaged in by them is insufficient to constitute misconduct which may reasonably tend to coerce or intimidate employees in the exercise of their Section 7 rights." *Medite of New Mexico, Inc.,* 314 NLRB at 1146.[7]

■ The ALJ made the following findings concerning one incident involving Perry Salazar and Tafoya:

At approximately 3:30 p.m. on June 13, 1990, Foreman Tommy Ortiz left the parking area outside the plant, drove his jeep across the railroad tracks, and came to a stop short of the highway because several children were playing in the driveway.

Several pickets gathered around his vehicle, including P. Salazar and Tafoya (on the driver side of the vehicle). The pickets called him a scab, struck his vehicle with the picket signs they were carrying, and Tafoya asked Ortiz to leave his vehicle. Ortiz made no response and slowly proceeded to and turned onto the highway.

Ortiz claimed he later discovered 8 to 10 deep scratches on the vehicle, reported the incident to Plant Manager Miller (by telephone) and drove to a police station to report the incident.

After leaving the police station, Ortiz saw P. Salazar drive by in his vehicle (the pickets were picketing in 4–hour shifts and Salazar's shift ended at 4 p.m.). Ortiz began to follow Salazar. When Salazar noticed the jeep following him through several turns, he pulled to the side of the road to see if the jeep would pass. Ortiz did not pass, but pulled up behind Salazar's vehicle. Salazar left his vehicle and asked Ortiz why he was following him. Ortiz accused Salazar of being responsible for damage to his jeep. Salazar denied the charge. Ortiz insisted Salazar was responsible and said he and his brothers would get him later. Salazar replied why wait, I'm here now. Ortiz drove away without responding.

*Medite of New Mexico, Inc.,* 314 NLRB at 1155 (footnotes omitted). The ALJ further

found that "I do not find that testimony establishes either that Salazar or Tafoya inflicted the alleged scratches in view of the composition of the signs" and that "Ortiz did not testify he saw *Salazar* and *Tafoya* inflict the scratches nor knew where the scratches were located." *Id.* at 1155 n. 8. Substantial evidence in the record supports the Board's factual findings.

We also agree with its conclusion that, absent proof that Salazar and Tafoya actually struck the car, "this brief incident does not amount to the type of serious conduct that would intimidate nonstriking employees from crossing the picket line and exercising their Section 7 rights." *Id.* at 1146–47. *Cf. Clougherty Packing Co.,* 292 NLRB at 1142 ("There can be little doubt that throwing rocks or other projectiles at moving vehicles ... are acts upon which an employer may rely to terminate."); *Clear Pine Mouldings, Inc.,* 268 NLRB at 1047 (finding misconduct where striker beat car with a two foot long club, breaking its windows). We similarly agree that the later interchange between Ortiz and Salazar, which included no threats by Salazar, does not amount to serious strike misconduct warranting a denial of reinstatement. *See Midwest Solvents, Inc.,* 696 F.2d at 766–67 (finding no strike misconduct when striker told nonstriker he should "watch out" because "some of the boys might get rowdy"); *cf. Precision Window Mfg., Inc. v. NLRB,* 963 F.2d 1105, 1108 (8th Cir.1992) ("Courts universally reject reinstatement when employees threaten to kill or harm supervisors after a firing....").

■ Medite argues that Tafoya was involved in another incident of strike misconduct, serious enough to justify not reinstating him. In this incident, a nonstriker, Joseph Mascarenas, was injured in a fight with strikers on the picket line. The ALJ made the following findings concerning Tafoya's involvement in this incident:

At the time Mascarenas left his vehicle and the strikers gathered around him, Tafoya was on the opposite side of the street grilling hamburgers and hotdogs in front

---

**7.** The Board agreed with Medite that Medite had a good faith belief that Perry Salazar and Tafoya    had engaged in strike misconduct.

of a parked vehicle. He reached a point behind Coca [who was involved in the fight with Mascarenas] as blows were exchanged and told the strikers to cut it out, they didn't need this.

*Medite of New Mexico, Inc.,* 314 NLRB at 1156. The ALJ also held that Tafoya "testified he did not strike Mascarenas and Mascarenas confirmed his testimony." *Id.* at 1156 n. 10.[8] We find that substantial evidence also supports the ALJ's and the Board's factual findings regarding these other incidents. Medite simply argues "[t]he Board's credibility resolutions concerning Tafoya's involvement in the Mascarenas incident should be given little, if any, weight due to the erroneous rulings with respect to sequestration and admissibility of the videotape." Pet'r's Br. at 41–42. We have held, however, that the Board ruled correctly on the videotape's admissibility and on the existence or not of prejudice from the ALJ's erroneous sequestration ruling. Furthermore, we cannot understand how a determination as to an individual's *credibility* would be impacted by the failure to sequester that witness or other witnesses. We affirm the Board's conclusion that Tafoya's conduct was not serious enough to warrant not reinstating him.

■■■ Medite also argues the Board erred in finding that Medite did not have a good faith belief that Max Salazar had engaged in serious misconduct rendering him ineligible for reinstatement. The ALJ found that Max Salazar had, on five occasions, shouted "bad words" to Margaret Espinosa, a longtime Medite employee who cleaned offices from 4 p.m. to midnight. There was also an incident involving Salazar and nonstriker Mike Grie-

go. The Board affirmed the ALJ's conclusion that Medite lacked a good faith belief that Salazar had engaged in the Espinosa misconduct because "M. Salazar's personnel file is devoid of any mention of the Espinosa complaints" and "[n]o one from Medite's personnel department supported [Medite personnel director] Stone's claim he or she considered and decided not to reinstate M. Salazar in March 1991 because of the Espinosa complaints." *Medite of New Mexico, Inc.,* 314 NLRB at 1157. The Board's finding that Medite lacked a good faith belief that Max Salazar had engaged in serious misconduct is supported by substantial evidence in the record.[9]

With respect to the Griego incident, the ALJ held that "Salazar impressed me as a much more forthright and reliable witness than Griego, whose testimony was hesitant and halting. I credit Salazar's testimony and find the encounter occurred in the manner and for the reason stated by Salazar." *Medite of New Mexico, Inc.,* 314 NLRB at 1157. " '[C]redibility determinations are to be made by the ALJ and the Board and will not be overturned by a reviewing court absent extraordinary circumstances.' " *Augusta Bakery Corp.,* 957 F.2d at 1477 (quoting *NLRB v. Illinois–American Water Co., S. Div.,* 933 F.2d 1368, 1374 (7th Cir.1991)). No such "extraordinary circumstances" exist here. *See Pergament United Sales, Inc. v. NLRB,* 920 F.2d 130, 138 (2d Cir.1990) (stating that the Board's "acceptance of a ALJ's finding regarding witness credibility will not be reversed unless those findings are 'hopelessly incredible' ") (quoting *NLRB v. American Geri–Care, Inc.,* 697 F.2d 56, 60 (2d Cir. 1982), *cert. denied,* 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 807 (1983)).

8. The ALJ observed that Tafoya "was a convincing witness" and credited his denial of his involvement in a third incident of alleged strike misconduct. *Medite of New Mexico, Inc.,* 314 NLRB at 1156 n. 12. Mascarenas himself testified that Tafoya did not hit him.

9. The ALJ alternatively concluded that Salazar's conduct toward Espinosa was not serious misconduct warranting a denial of reinstatement. "Crude and obscene remarks to a female employee by a striker while the employee crossed the picket line, unaccompanied by any physical threats, is insufficient basis for denying a striker reinstatement to his former job." *Medite of New Mexico, Inc.,* 314 NLRB at 1162. We agree that,

while certainly not laudable, crude and obscene remarks have generally not been deemed serious misconduct under the Board's precedents. The Eighth Circuit recently observed:

> We have no quarrel with the cases that on less extreme facts have awarded reinstatement when the fired employee challenged his supervisor to a fight or used intemperate language. But even when employees' outbursts were *more extreme,* the Board awarded reinstatement only after finding that there was no actual threat to kill or to commit a violent act.

*Precision Window Mfg, Inc. v. NLRB,* 963 F.2d 1105, 1109 (8th Cir.1992) (citations omitted).

### D. *Mueller*

Medite's remaining argument concerns its treatment of striker Mueller. As indicated previously, Medite sent Mueller a letter in August 1991 indicating that a "job opening exists" and that there "are several eligible persons who may be eligible to fill this position." It directed Mueller to contact the personnel manager by a certain date if he was interested in "filling this position" and stated that his failure to contact the company by that date would make Medite "assume that [he was] not interested in reinstatement, and the position will be offered to another person." When Mueller did not contact the personnel director by the specified date, Medite gave the position to another person. Mueller thereafter wrote to the company stating that he wished to return to work and "requested that he be offered any future openings." *Medite of New Mexico, Inc.*, 314 NLRB at 1153.

Medite argues that its letter to Mueller was an offer of reinstatement to his pre-strike position. The ALJ and Board held that it was not, and that Medite violated the Act by not reinstating Mueller to any laborer positions available after Mueller tendered his unconditional offer to return to work. We agree with the Board and the ALJ that the August 1991 letter was not an offer of reinstatement. It was, at best, ambiguous. It merely notifies Mueller of a "job opening" for which there were "several eligible persons." Although the second paragraph does discuss "reinstatement" and indicates that Mueller's failure to respond by the specified date will cause the "position" to be "offered to another person," which suggest that Mueller was a strong contender for the position, the letter as a whole does not clearly offer reinstatement to Mueller.

Medite relies heavily on *NLRB v. Betts Baking Co.*, 428 F.2d 156 (10th Cir.1970), in which we held a letter to an employee was an offer of reinstatement. The letter in *Betts Baking Co.* was, however, quite different from the letter to Mueller. The *Betts Baking Co.* letter stated "[t]his is a letter offering you reinstatement in our Company as a

transport driver. Please report to work Sunday August 1, 1965. You will have the same pay scale as you did before...." *Id.* at 157. The fact that both letters referred to a date, and indicated that failure to respond by that date would be taken as a lack of interest in reinstatement, does not mean that the two letters are identical in other respects.

In sum, we agree that the letter to Mueller was not an unconditional offer of reinstatement.[10] The Board therefore correctly determined that Medite violated the Act by failing to reinstate Mueller following receipt of his unconditional offer to return to work.

### CONCLUSION

For the foregoing reasons, we deny review and grant enforcement of the Board's order.

---

**10.** We base our determination on the text of the letter itself, and its ordinary meaning. Thus, Medite's claim that Mueller's hearing testimony

"was a tissue of inconsistencies and contradictions" is irrelevant. Pet'r's Reply Br. at 9.